STATE of Missouri,
Plaintiff-Respondent,

v.

Cecil George OGLE,
Defendant-Appellant.

No. 12836.

Missouri Court of Appeals,
Southern District,
Division Two.

March 5, 1984.

Motion for Rehearing Overruled and to Transfer to Supreme Court Denied March 27, 1984.

Application to Transfer Denied May 15, 1984.

John D. Ashcroft, Atty. Gen., John Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Debra S. Hans, Asst. Public Defender, Springfield, for defendant-appellant.

PREWITT, Judge.

Defendant appealed from a conviction of rape by forcible compulsion. Among his contentions on appeal were points contending that the mother of the complaining witness should not have been allowed to testify regarding her daughter's psychological and mental condition following the date she claimed to have been raped and that two physicians should not have been allowed to testify regarding psychological aftereffects of forcible rape victims. This court filed an opinion affirming the conviction. Thereafter, application for transfer was made to the supreme court. While the application was pending the supreme court decided *State v. Taylor*, 663 S.W.2d 235 (Mo. banc 1984), dealing with evidence related to the testimony questioned here. Thereafter, defendant's application was sustained and the cause then retransferred to this district "to permit it to consider the effect on its decision of the decision in *State v. Taylor*." Our previous opinion stated:

"Following jury trial, defendant was convicted of rape by forcible compulsion. § 566.030.1(1), RSMo 1978. He was thereafter found to be a persistent offender and sentenced to 20 years' imprisonment.

In defendant's first point he contends that the evidence was insufficient to establish the crime charged. In our review of such a contention we accept as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence, and disregard all evidence and inferences to the contrary. *State v. Manning*, 612 S.W.2d 823, 825 (Mo.App.1981). The testimony of a witness complaining of a rape is sufficient to sustain a conviction without other corroboration unless that testimony is so contradictory, or in conflict with physical facts, surrounding circumstances, and common experience, as to be unconvincing. *State v. Johnson*, 595 S.W.2d 774, 776 (Mo.App.1980); *State v. Phillips*, 585 S.W.2d 517, 520 (Mo.App. 1979).

The complaining witness testified that defendant forced his way into her house, struck her several times and intercourse occurred due to that force and threats of further force. Defendant testified that she voluntarily let him in the house, led him into the bedroom, removed her clothes, and lay on the bed. He said that he had just gotten the straps undone on his overalls and was still standing up when there was a noise in front of the house that sounded like 'footsteps'; she 'freaked out', said, 'Oh, shit', jumped out the window and hollered, 'rape, rape, George Ogle did it.' The evidence of the other facts material to this contention was substantially the same as that of a prior trial for this charge which was reversed for instructional error. See *State v. Ogle*, 627 S.W.2d 73 (Mo.App. 1981). Those facts are set out there and we see no point in reciting them again. There was evidence to support the charge. The testimony of the complaining witness was sufficient and although not necessary here, it was corroborated. This point is denied.

Points two and five are closely related and we discuss them together. In his second point defendant contends that the trial court erred in allowing the mother of the complaining witness to testify regarding her daughter's psychological and mental condition after the date of the alleged rape. The rape allegedly occurred at approximately 11:00 p.m. on January 15th. The complaining witness was examined at a hospital early on the morning of January 16th. Her mother went to the hospital early that morning and took her daughter home with her. The mother testified to her daughter's condition that morning. She also said that her daughter had nightmares for a year after the incident; still has trouble sleeping at night; and was afraid to be alone at night.

In point five defendant contends that the trial court erred in allowing two physicians to testify generally regarding psychological aftereffects of forcible rape victims. Defendant contends that the testimony of the physicians was immaterial with regard to the offense charged and was calculated to

appeal to the emotion and sympathy of the jury.

One of the physicians testified that a rape victim often has psychological damage that 'may last for some time'. He stated that this is 'quite frequent'. Defendant's counsel objected to this testimony. The other physician testified later, without objection, that a rape victim can have psychological problems for a long time thereafter. Both physicians were called as witnesses for the defendant and this testimony was brought out by the state on cross-examination. Neither physician knew whether the complaining witness had suffered any 'emotional trauma' or 'emotional problems' from the incident charged.

The complaining witness's condition shortly after the offense charged was relevant on the issue of force and clearly admissible. See *State v. Berry*, 609 S.W.2d 948, 954 (Mo. banc 1980); 75 C.J.S. Rape § 57b, p. 530. There was no error in allowing the mother to describe her daughter's condition the next day. However, whether the physician's testimony and the evidence regarding her condition to the date of trial, three and a half years after the alleged rape, should have been allowed are more difficult questions.

Neither party has cited any cases to us involving expert testimony of a forcible rape victim's mental condition due to the rape or involving other evidence of a victim's condition a considerable time after the alleged rape. Our research has disclosed two Missouri cases which discuss evidence of the victim's physical condition after such time. *State v. Houx*, 109 Mo. 654, 19 S.W. 35, 37 (1892), stated that evidence of a victim's physical condition three months after the offense was 'too remote to throw any light on the real issues in the case.' However, under the facts of that case admission of the evidence was deemed harmless error. In *State v. Mitchell*, 339 Mo. 228, 96 S.W.2d 341, 343–344 (1936), the court held that evidence of a complaining witness's physical condition 60 days after the alleged rape was relevant as tending to show that force was used.

*State v. Johnson*, 637 S.W.2d 157, 161 (Mo.App.1982), held that testimony, that one of the victims of a 'gang' rape had dropped out of beauty college after the incident and another had moved to another state, was 'at least minimally relevant to refute the defendant's prior recorded statement that the sexual activities were consensual.' The court stated that it was inferable from the testimony that 'these major voluntary changes in the victim's lives were made because of the sexual activities testified to and that such changes would not have been made if the activities had been consented to.'

*People v. Egan*, 331 Ill. 489, 163 N.E. 357, 358 (1928), held inadmissible evidence that the health of the complaining witness had been greatly impaired from after the alleged rape until the time of trial. The time of trial was not stated in the opinion. The court determined that '[w]hile in cases of this character it is competent to show the physical condition of the prosecutrix soon after the commission of the crime as tending to prove its commission, evidence as to her condition, either mental or physical, a long time thereafter, has no tendency to prove the only question at issue, which is the guilt of the defendant.' The only question in *Egan* was whether a forcible rape had been committed. *Egan* cites as authority for its holding on this issue *Bynum v. State*, 76 Fla. 618, 80 So. 572 (1919) [partially overruled on other grounds in *Hunter v. State*, 85 Fla. 91, 95 So. 115 (1932)], *State v. Houx*, supra, and *Bailey v. State*, 30 S.W. 669 (Tex.Cr.App.1895).

*Bynum* held that testimony that the prosecutrix gave birth to a dead baby and 'never recovered from that birth,' that it 'left her in a bad condition; she lay for five weeks, that she could not walk, and for three days she was senseless', was not material and was prejudicial. The prosecution there was for 'statutory rape' and force apparently was not involved.

*Bailey* was a prosecution for seduction. It held that evidence that the woman whom the defendant was charged with seducing had committed suicide two days after the

alleged seduction was inadmissible. There apparently was no evidence as to the reason she committed suicide.

When *Egan* was decided the psychological effects of forcible rape were probably not as well documented as now and then even premarital consensual intercourse might cause emotional problems, such as that which may have occurred to the victims in *Bynum* and *Bailey.* That psychological problems often result from forcible rape is now well documented. See *In the Matter of Pittsburg Action Against Rape,* 494 Pa. 15, 428 A.2d 126, 138–139 (Larsen, J., dissenting) (1981).

*State v. LeBrun,* 37 Or.App. 411, 587 P.2d 1044, 1047 (1978), allowed a 'Rape Victim Advocate' to testify that the victim's emotional state comported with the emotional state of most of the other sexual abuse victims that she had worked with. When she had seen the victim is not apparent from the opinion and the only objection to the testimony was that the witness was not qualified to express it.

*State v. Saldana,* 324 N.W.2d 227 (Minn. 1982), held that evidence of typical post-rape symptoms and behavior of rape victims and an expert's opinion that the complaining witness was a victim of rape and had not fantasized the rape was held to be reversible error. Relying on *Saldana, State v. McGee,* 324 N.W.2d 232 (Minn. 1982), with a strong dissent, held that the admission of evidence of expert testimony identifying the complainant's behavior as consistent with 'rape trauma syndrome' was reversible error.

In *State v. Marks,* 231 Kan. 645, 647 P.2d 1292, 1299 (1982), testimony of a psychiatrist who examined the victim two weeks after a rape 'that she was suffering from the post-traumatic stress disorder known as rape trauma syndrome' was held admissible. The court stated that:

'The identification of rape trauma syndrome is a relatively new psychiatric development. Even so, if the presence of rape trauma syndrome is detectable and reliable as evidence that a forcible assault did take place, it is relevant when a defendant argues the victim consented to sexual intercourse. As such an expert's opinion does not invade the province of the jury. It is merely offered as any other evidence, with the expert subject to cross-examination and the jury left to determine its weight.'

*People v. Bledsoe,* 140 Cal.App.3d 267, 189 Cal.Rptr. 726, 728–730 (1983), acknowledging that certain dangers could exist to its use, found admissible expert testimony from a rape counselor that the victim suffered from 'rape trauma crisis syndrome.' It was found relevant on whether forcible rape occurred.

In many forcible rape prosecutions the jury's decision has to be based on who it believes as between the participants. Anything that aids the jury in making that determination should be presented to them, unless its relevance is outweighed by improper prejudice to the defendant or other reasons that might prevent justice from occurring.

It is common knowledge that a violent crime can cause changes in the mental condition of a person. Where, as here, the evidence shows that the change was caused by the crime, we think it is some evidence that the crime occurred. If there was no question but that a rape had occurred, such evidence would not be relevant, but where there is a question whether the complaining witness was forcibly raped, her condition long after the rape may be relevant. That is particularly true where, as here, the defendant contends that the complaining witness lied about the rape. See *People v. Brown,* 107 Ill.App.3d 576, 63 Ill.Dec. 318, 437 N.E.2d 1240, 1246–1247 (1982). See also, *State v. Staples,* 120 N.H. 278, 415 A.2d 320, 321–322 (1980). Although the absence of psychological problems would not appear to be relevant evidence, as due to certain factors, some people might not be significantly affected, the fact that there are significant changes in the person's life attributable to the rape could be.

We hold that the mother's testimony was admissible as an aid to the jury in deter-

mining if forcible rape occurred. We realize that symptoms such as that testified to can be fabricated, but whether they were was a credibility issue for the jury. The potential prejudice to the defendant due to the possibility that the complaining witness's continuing problems may be faked or due to other causes is overweighed by the desirability of presenting to the jury as many of the relevant facts as possible. Sympathy for her, which might be prejudicial to the defendant here, was likely only if the jury believed that her continuing problems were caused by rape, and if they believed that, then, under the facts presented to them, they should have found defendant guilty.

The testimony of the mother regarding her daughter's nightmares and condition to the date of trial was remote from the incident, but remoteness in time ordinarily affects the weight rather than the admissibility of testimony, and whether evidence is inadmissible because it is too remote is a matter resting largely in the sound discretion of the trial court. *State v. Stanley*, 639 S.W.2d 237, 239 (Mo.App.1982). We find no abuse of discretion here.

The physicians' testimony was relevant as it supported the mother's testimony by showing that victims of forcible rape often have emotional problems.

In determining that the evidence was properly admitted here, we recognize that when there is expert testimony seemingly well qualified experts often reach conflicting results and that observers may be justified in feeling that experts often slant their testimony in favor of the party who employs them. When that occurs, a party with substantial funds available to hire experts may have a distinct advantage by being able to hire multiple, and more expensive and presumably better qualified experts. Allowing expert testimony without restriction could lead to the 'battle of experts that would invade the jury's province of fact-finding and add confusion rather than clarity', feared in *Saldana*, 324 N.W.2d at 230. Also, the unbridled use of expert testimony could lead to subjecting rape victims to examinations and tests to determine if they have psychological problems due to a rape. Putting the victim through additional ordeals might not serve the best interests of society. Here, however, the testimony of the physicians fell well short of that condemned in *Saldana* and *McGee* and allowed in *LeBrun, Marks,* and *Bledsoe.* It did not create any of these problems and likely told the jurors no more than they already knew.

Defendant also contends that the physicians were not qualified to testify regarding the psychological problems of forcible rape victims. No objection was made to the testimony of one of the physicians and the trial court's finding that the other physician was qualified was not an abuse of its discretion. In addition to his education, the physician had treated approximately fifty rape victims. The qualifications of an expert witness rest in the sound discretion of the trial court. *State v. Rhone*, 555 S.W.2d 839, 841–842 (Mo. banc 1977). Points two and five are denied.

Defendant contends in his third point that the trial court erred in failing to give his requested instruction submitting assault in the third degree. MAI–CR 2d 19.-06.2. Defendant asserts that assault in the third degree was a lesser included offense of rape under the facts here and was supported by the evidence at trial. He contends that because the complaining witness testified that he struck her, and he testified that they did not have intercourse, the jury might have found that no rape occurred, but that he was guilty of assault in the third degree.

The evidence established that if defendant struck the complaining witness, he did so to force her to have intercourse with him. That was the only evidence on why he struck her and no other inference can be drawn from the record. Section 565.070, Assault in the third degree, appears to replace and is similar to former § 559.220, RSMo 1969. The present criminal code divides assault into three degrees similar to the former law, with assault in the third degree being akin to former § 559.220,

RSMo 1969, 'Common assault'. See Comment following § 565.050, 40A V.A.M.S., p. 448.

Common assault requires a general intent to injure and where there is no evidence to support a finding of general intent to injure, it is not error to omit an instruction on common assault as a lesser included offense. *State v. Strubberg,* 616 S.W.2d 809, 817 (Mo. banc 1981). We think that holding would also be applicable to § 565.-070. Here the evidence showed that if there was an assault, its purpose was to accomplish rape. Thus, the third-degree assault instruction was not required. See *State v. Walker,* 505 S.W.2d 119, 122 (Mo. App.1973). See also *State v. Parton,* 487 S.W.2d 523, 526 (Mo.1972); *State v. Leigh,* 466 S.W.2d 685, 686 (Mo.1971); *State v. Bird,* 358 Mo. 284, 214 S.W.2d 38, 39–40 (1948); *State v. McCabe,* 512 S.W.2d 442, 444 (Mo.App.1974). Point three is denied.

For his fourth point, defendant asserts that the trial court erred in allowing the father of the complaining witness to describe her physical condition when he saw her during the early morning hours following the time that the rape allegedly occurred. Defendant contends that this testimony was 'inflammatory' and was cumulative as it had been amply proven by other testimony.

When cumulative evidence should stop is within the discretion of the trial court, said discretion being exercised with relevance as the main criterion; the same test is applicable to the introduction of potentially prejudiced or inflammatory evidence. *State v. McCabe,* supra, 512 S.W.2d at 444. We find no abuse of discretion here. The state had the burden of proof and as defendant had not admitted physically abusing her, we cannot say that there was an abuse of discretion in allowing additional testimony of her physical condition shortly after the incident.

As his final point, defendant contends that the trial court erred in permitting the state to cross-examine him concerning an assault on Steve Loftis and stolen stereos belonging to Dale Neal because the cross-examination exceeded the scope of his direct examination in violation of § 546.260, RSMo 1978.

The state is not confined to a rote recitation or a categorical review of matters covered on defendant's direct examination but may inquire into all matters within the fair purview of the direct examination. *State v. Black,* 587 S.W.2d 865, 878 (Mo.App. 1979). If a defendant generally refers to a subject on direct examination, he may be cross-examined in detail about that subject and when he states a fact in relation to his actions, the state may inquire as to particular circumstances which throw light on that fact. Id. See also, *State v. Williams,* 519 S.W.2d 576, 578 (Mo.App.1975).

Defendant testified on direct that his purpose in going to the complaining witness's house when the incident occurred was to look for the stereos. His earlier trips to her house and his other activities for that purpose had included Loftis. By cross-examination of him the state attempted to show that defendant had abandoned looking for the stereos and went to her house to have intercourse with her, by force if necessary. The trial court has considerable discretion in controlling the scope of cross-examination, *State v. Black,* supra, 587 S.W.2d at 879 and no abuse is found here. Whether the evidence was relevant we do not decide; we determine only that the cross-examination did not exceed the scope of the direct examination. This point is denied."

■ We have reconsidered points two and five in light of *Taylor,* a decision we agree with not just because we are obligated to follow it, but because of its logic and practical application. The expert testimony in *Taylor* was held improper because it boosted the complaining witness's credibility by showing that she suffered from "rape trauma syndrome" created as a result of a rape by the defendant. The court said that under the qualifications given the most the expert "could legitimately state would be that the prosecutrix' symptoms were consistent with the traumatic experi-

ence—even a stressful sexual experience." See 663 S.W.2d at 241.

■ We do not think that allowing the evidence complained of here violated the holding in *Taylor* or is inconsistent with *State v. Nobles*, 665 S.W.2d 694 (Mo.App. Eastern District 1984). Here there was no evidence that the victim suffered from "rape trauma syndrome" and no opinion was given that she had been raped. The testimony of the complaining witness's mother was proper for the jury's consideration as showing her daughter's condition after the alleged rape. Whether her condition was related to the rape charged was proper for the jury to determine without the aid of expert testimony. We think the cases referred to in the previous opinion support showing the complaining witness's condition afterwards and that *Taylor* does not affect such holdings, but only the use of expert testimony regarding the condition.

■ Neither physician testified that the complaining witness suffered from any psychological problems as a result of a rape but only that rape victims might have such problems. If this bolstered the complaining witness's testimony it was only to the extent that emotional problems can be caused by rape, and, as previously noted in our original opinion, it is unlikely that this told the jurors any more than they already knew. That this can occur is not a matter that we feel can be legitimately debated.

*Taylor* also indicates that the use of "rape trauma syndrome" in testimony may be improper "for it suggests that the syndrome may only be caused by 'rape'". See 663 S.W.2d at 240. Rape trauma syndrome was not a term used by any of the witnesses in this case.

As there was no expert testimony indicating that the complaining witness was telling the truth, and no expert said that she had "rape trauma syndrome" or other problems caused by rape, we do not find that *Taylor* calls for a different result than we previously reached.

The judgment is affirmed.

MAUS, P.J., and HOGAN J., concur.