**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Jeffrey POLLARD,
Defendant-Appellant.**

**No. 50614.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 26, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 1, 1986.

Application to Transfer Denied
Nov. 18, 1986.

---

William L. Webster, Atty. Gen., Carrie Francke, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Henry Robertson, St. Louis, for defendant-appellant.

SIMON, Judge.

James Pollard, defendant, appeals from a conviction of sodomy of a child under the age of fourteen, § 566.060.3 RSMo Supp. 1984, and kidnapping, § 565.110 RSMo 1978. Following the jury's verdict in the Circuit Court of the City of St. Louis, defendant was sentenced to two consecutive terms of thirty years each.

On appeal, defendant contends the trial court erred in: (1) allowing the victim's mother to testify about his nightmares, loss of sleep and fears; (2) permitting Dr. Stanley to testify as to the cause of victim's injuries based on his examination of other child victims of sexual abuse; (3) allowing the victim's mother to sit within the railing near counsel table during victim's testimony. We affirm.

Defendant does not contest the sufficiency of the evidence, therefore, the pertinent facts will be presented upon consideration of defendant's points.

In his first point, defendant argues that the victim's mother's testimony regarding victim's, S.J., nightmares, loss of appetite, and fears were not relevant to prove any element of the charged offense, and that if relevant, its prejudicial effect outweighed any probative value it may have had. On appeal, the state argues such testimony is relevant as evidence that an act of sodomy was committed against S.J. and relies on *State v. Ogle,* 668 S.W.2d 138 (Mo.App. 1984).

■ Our standard of review is clear. Decisions as to relevancy of evidence are left to the sound discretion of the trial court, and its rulings will not be disturbed on appeal unless an abuse of discretion is shown. *State v. Blair,* 638 S.W.2d 739 (Mo. banc 1982). Even if evidence is relevant, if it brings into a case matters which cause prejudice wholly disproportionate to the value and usefulness of the offered evidence, it should be excluded. *State v. Gibson,* 636 S.W.2d 956, 958 (Mo. banc 1982). Whether such offered evidence should be excluded is a matter for the trial court's discretion. *Gibson,* 636 S.W.2d at 958.

S.J.'s mother testified that for two weeks after his kidnapping and sexual abuse she noticed changes in his behavior. She testi-

fied that he was afraid to go to school, suffered from a loss of appetite, and had nightmares. We first determine whether such testimony was relevant to a triable issue in the case.

Dr. Stanley testified to the observations he made of S.J.'s condition when S.J. was brought to Cardinal Glennon Memorial Hospital following his discovery. The state attempted to determine if Dr. Stanley had ever examined children whose conditions were similar to those of S.J. Defendant's relevancy objection was sustained. The state made an offer of proof that Dr. Stanley was being qualified as an expert. Defendant objected to this offer stating, "My concern would be that the conclusion would be going to opinion as to whether or not this [sodomy] occurred or not, obviously there was something that happened...." In defendant's appellate brief, this objection is interpreted as an objection to Dr. Stanley's testimony "being used to prove that sodomy in this case in fact occurred." Defendant's objection clearly reveals that a contested issue at trial was whether S.J. had been sodomized. Not only was defendant contesting S.J.'s identification, but also whether S.J. was sodomized.

In *Ogle*, the primary issue was whether a rape occurred. The mother of the rape victim testified to her daughter's (1) condition the morning after she was raped; (2) nightmares for one year after the incident; (3) trouble sleeping at night; and (4) fear of being alone at night. The *Ogle* court held that this testimony was relevant because it was evidence that the victim had been raped, that the crime actually took place. "It is common knowledge that a violent crime can cause changes in the mental condition of a person. Where, as here, the evidence shows that the change was caused by the crime, we think it is some evidence that the crime occurred." *Ogle*, 668 S.W.2d at 141.

◼ Here, the issue of whether S.J. was sodomized was contested. Therefore, S.J.'s mother's testimony was some evidence that the act complained of occurred, and was therefore relevant under *Ogle*. We find no abuse of discretion by the trial court in allowing S.J.'s mother to testify.

We next examine whether the prejudicial effect of S.J.'s mother's testimony was so wholly disproportionate to its value that its admission by the trial court was an abuse of discretion. Defendant draws our attention to *State v. Taylor*, 663 S.W.2d 235, 240 (Mo. banc 1984) in support of his argument that the trial court abused its discretion in permitting S.J.'s mother's testimony.

In *Taylor*, our Supreme Court upheld that expert testimony regarding "rape trauma syndrome" was not admissible because it is not a scientific theory which is parochially accepted or rationally sound. The court then examined whether the admission of the testimony was prejudicial to the defendant. The court observed that when the psychological expert testified at trial that the prosecutrix was suffering from "rape trauma syndrome," he was making a conclusion that she in fact had been raped. The basis of this conclusion was his belief, that during the psychological evaluation, the prosecutrix was telling him the truth. The confluence of the expert's status as an authority, and his implicit bolstering of the prosecutrix's credibility, resulted in an invasion of the jury's province, of such a magnitude, that the use of the expert's testimony was inimical to proper jury operation. Whether or not the prosecutrix had been raped and whether or not the defendant is responsible were questions for the jury. Consequently, the admission of expert testimony on "rape trauma syndrome" was prejudicial error.

In the case at bar, S.J.'s mother is not a psychological expert nor did she testify that S.J. was suffering from "trauma syndrome" of any type. These facts alone, facts of critical importance to the *Taylor* analysis, makes this case sufficiently distinguishable.

◼ The potential prejudice to the defendant, due to the possibility that S.J.'s continuing problems may be feigned or due to other causes, was outweighed by the desirability of presenting to the jury as

many relevant facts as possible. Sympathy for S.J., while prejudicial to defendant, was likely only if the jury believed his continuing problems were caused by an act of sodomy committed by defendant, and if they believed that, under the facts presented to them, they should have found defendant guilty. *Ogle*, 668 S.W.2d at 142. Defendant's first point is without merit.

Defendant's second point is set forth verbatim.

> The trial court erred by permitting Dr. Stanley to testify to the *cause* of the victim's injuries based on his examination of other child victims of sexual abuse because his opinion was an unfounded conclusion that the victim's condition was caused by sexual abuse, not merely that it was consistent with that cause, in that the witness had no personal knowledge of the causes of the injuries in any of these cases, and his experience was not used to establish his expertise, as claimed, but to establish that sodomy had in fact occurred. [emphasis added]

Essentially, defendant is arguing that the state wanted to know if Dr. Stanley treated child victims of sexual abuse and whether his conclusions as to S.J. were based on comparisons of S.J. to other cases that had been reported to him as sexual abuse. Defendant contends that this is irrelevant and hearsay. Further, defendant contends that Dr. Stanley's opinion implied that the victim was a victim of sexual abuse. Thus, he exceeded his qualifications and gave a "scientific cachet" to S.J.'s testimony. Therefore, the trial court erred in permitting Dr. Stanley to testify to the *cause* of the victim's injury. In support of his contention, the defendant relies on *State v. Taylor*, 663 S.W.2d 235 (Mo. banc 1984).

We have examined defendant's motion for a new trial. In his motion no allegation of error was made regarding the trial court's permitting Dr. Stanley to testify to the *cause* of the victim's injury based on his examination of other child victims of sexual abuse. The only allegation of error in his motion for a new trial which in any way resembles the error urged on appeal is his second one, wherein defendant contends: "The trial court erred by overruling defendant's objection to the state asking Dr. Stanley about other children under these same circumstances. The answer elicited from said question was irrelevant and prejudicial to defendant. This violated defendant's federal and state statutory, and constitutional rights to a fair trial."

At trial Dr. Stanley was asked, "Have you had occasion, Doctor, to examine children under similar circumstances before? " Defendant's relevancy objection was sustained. The state then made an offer of proof that the question went to Dr. Stanley's qualifications as an expert. Defendant objected that this question was repetitious since Dr. Stanley had already been qualified as an expert. Defendant's objection was overruled.

It is well settled that an allegation of error in a motion for a new trial may not be changed or broadened on appeal. *State v. Blair*, 631 S.W.2d 91, 94 (Mo.App.1982). Since the contention made in defendant's second point is not contained in his motion for new trial, such contention has not been preserved for review. *State v. Seaton*, 674 S.W.2d 214, 215 (Mo.App.1984).

Although defendant did object at trial to the state asking Dr. Stanley if he had examined other children under circumstances similar to those of S.J., defendant did *not* object at trial to the admissibility of Dr. Stanley's testimony regarding the *cause* of S.J.'s injuries. Assignment of error in this court must be based upon an objection in the trial court. *State v. Barker*, 572 S.W.2d 185, 187 (Mo.App.1978). The pertinent part of the transcript follows:

> Q PROSECUTOR: Now, based upon your examination of the victim in this case, [S.J.'s name deleted], based upon your training and expertise as a pediatrician and as a staff pediatrician at Cardinal Glennon Memorial Hospital, based upon the examination you have performed as a pediatrician at Cardinal Glennon Memorial Hospital of children within the bounds of reasonable medical

certainty, do you have a conclusion as to whether your findings are consistent with some type of anal penetration?

A There's no doubt in my mind.

Q The tears to the anus that you found, the poor tone to the sphincter muscle, could not have been caused by falling on a fire hydrant?

DEFENDANT: I object to the leading form of the question.

THE COURT: Sustained as to the form of the question.

Q PROSECUTOR: Could the tears to the anus that you found and the poor tonal quality of the sphincter muscle be caused by falling on a fire hydrant or falling on a broomstick or something like that?

A Oh, No.

Q Could it have been caused by the child himself?

A No.

Q Would it have been caused in only one manner and that would be some type of penetration by someone?

A Yes, that's how it would occur.

Q By someone?

A Yes.

■ Defendant's second point is not properly before this court for two reasons. Defendant failed to raise the point in his motion for a new trial and failed to properly object at trial. In any event, we have reviewed Dr. Stanley's testimony and do not find any injustice resulting therefrom. Therefore, further consideration is not required. *State v. Bostic,* 625 S.W.2d 128, 130 (Mo.1981).

In his third point, defendant contends the trial court erred by allowing S.J.'s mother to sit within the railing near the counsel's table during S.J.'s testimony. S.J. was six years old at the time of the trial. When S.J. was being examined regarding the acts committed against his person, he began to cry, and a recess was called. Before the trial resumed, the prosecutor requested one of three things: 1) that S.J.'s mother be allowed to stand by the witness chair to provide him with security; 2) that the wit-

ness chair be turned so that S.J. would not have to look at defendant, or 3) that S.J.'s mother be present in the courtroom. The court rejected the first two alternatives, but allowed S.J.'s mother to sit in the courtroom near the counsel table in the first row inside the railing. The court instructed the prosecutor to admonish and/or caution S.J.'s mother that "she's not to say anything or to encourage any movements of the head or eyes which could be interpreted to be communication with the boy while he's on the stand."

■ The decision as to whether witnesses should be excluded from the courtroom is discretionary with the trial court, *State v. Crider,* 419 S.W.2d 13, 14–15 (Mo.1967), and will not be disturbed unless abused, *State v. Tummons,* 34 S.W.2d 122, 123–124 (Mo.1930). Young children, who are victims of sexual abuse, have great difficulty in recounting to juries the sordid details of their painful experience. Wide latitude should be granted to trial courts so that such victims can recount their experiences without being overwhelmed by crippling emotional strain. Their testimony is often of critical importance since they are often the only occurrence witness. See Note, *The Testimony of Child Victims in Sex Abuse Prosecution: Two Legislative Innovations,* 98 Harv.L.Rev. 806 (1985).

■ S.J.'s mother was instructed not to communicate with S.J. through gesture or otherwise, and defendant does not indicate she did so. We cannot agree that the presence of S.J.'s mother in a chair just inside the railing was in-and-of-itself an undue influence upon S.J. which resulted in prejudicial harm to the defendant.

The judgment of the trial court is affirmed.

KAROHL, P.J., and GARY M. GAERTNER, J., concur.