554 A.2d 974

**COMMONWEALTH of Pennsylvania**

v.

**Robert M. PANKRAZ, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 9, 1989.

Filed March 8, 1989.

Petition for Allowance of Appeal Denied
Aug. 3, 1989.

118

David L. Shenkle, Doylestown, for appellant.

Stephen B. Harris, Assistant District Attorney, Warrington, for Com., appellee.

Before WIEAND, MONTEMURO and HOFFMAN, JJ.

WIEAND, Judge:

Robert M. Pankraz was tried by jury and was found guilty of simple assault,[1] indecent assault,[2] corruption of a minor,[3] recklessly endangering another person[4] and endangering the welfare of a child.[5] Post-trial motions were denied, and Pankraz was sentenced to serve a term of imprisonment for not less than two and one-half (2½) years nor more than five (5) years. On direct appeal from the judgment of sentence, Pankraz contends that the evidence was insufficient to sustain the findings of guilt, that the alleged victim was incompetent to testify because of her age, and that she should not have been allowed to be seated in her grandmother's lap while testifying. We find no merit in these arguments and affirm the judgment of sentence.

1. 18 Pa.C.S. § 2701(a)(1).
2. 18 Pa.C.S. § 3126(1).
3. 18 Pa.C.S. § 6301(a).
4. 18 Pa.C.S. § 2705.
5. 18 Pa.C.S. § 4304.

██ Amy Hayes, the daughter of appellant, was four years of age at the time of the trial. She testified that, on an occasion prior to the time when she had gone to live with her maternal grandmother in October, 1986, appellant had repeatedly inserted a sharp object, which she believed to be a screwdriver or knife, into her vagina. With the assistance of an anatomically correct doll and a pen she was able to demonstrate the assault which had been made upon her by appellant. Her testimony was corroborated in part by Dr. Cynthia A. Briede, who had examined the child and found a "skin tag" in her vaginal tract. The doctor explained that the skin tag was not of recent origin, that the tag was the result of a scarring process following a trauma to the vaginal tract, and that much of the healing process had occurred. The injury, she said, was consistent with the placing of a screwdriver or knife in the child's vagina. The doctor also ruled out as possible causes a birth defect, a congenital defect, an infection, or the falling from a bicycle or bed. She concluded: "What I can say with certainty is that it would have to have been some sort of trauma to cause a tearing or a laceration of the mucosa, that there was injury to the mucosa probably with some bleeding at that time which has since healed and where the tissue came back together, it's caused a scar."

The child's testimony was also corroborated in part by her paternal and maternal grandmothers. While her diaper was being changed, the child told her paternal grandmother that "my daddy hurts me here" and placed her finger on her vagina. Her maternal grandmother testified that while Amy had been at her house she complained about soreness in the area of her vagina and that a visual examination had disclosed the area to be red and sore.

Appellant asks that we review the sufficiency of the evidence after eliminating the testimony of the child who, he contends, was an incompetent witness. It is well settled, however, that in determining the sufficiency of the evidence to support the verdict, we are required to consider all evidence actually received, whether the trial court's rulings

on evidence were correct or incorrect. See: *Commonwealth v. Manhart*, 349 Pa.Super. 552, 556, 503 A.2d 986, 988 (1986); *Commonwealth v. Nelson*, 320 Pa.Super. 488, 494, 467 A.2d 638, 641 (1983); *Commonwealth v. Minnis*, 312 Pa.Super. 53, 55, 458 A.2d 231, 232 (1983). When all the evidence is examined in the instant case, it is clear that it was sufficient to support the verdict.

◼ Appellant contends also that inserting a knife or screwdriver into the vagina of a child does not constitute corruption of a minor. It does not constitute a violation of 18 Pa.C.S. § 6301, he argues, because "[i]t is obvious that the activity alleged did not give the child the sort of illicit pleasure which might tend to corrupt." (Appellant's brief at p. 3). We disagree.

Corruption of minors is defined by statute as follows:

**(a) Offense defined.**—*Whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age,* or who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor in violating his or her parole or any order of court, *is guilty of a misdemeanor of the first degree.*

18 Pa.C.S. § 6301(a) (emphasis added). In construing this statute, the Superior Court has said:

[T]he Commonwealth need not prove that the defendant's acts actually corrupted the minor's morals, but only that they tended to do so. *See e.g. Commonwealth v. Davison*, 243 Pa.Super. 12, 14 n. 1, 364 A.2d 425, 426 n. 1 (1976). Nor is the Commonwealth required to prove any particular sort or number of acts. In *Commonwealth v. Mezaros*, 194 Pa.Super. 462, 168 A.2d 781 (1961), this court said:

'Tending to Corrupt' like 'contributing to delinquency' is a broad term involving conduct toward a child in an unlimited variety of ways which tends to produce or to encourage or to continue conduct of the child which would amount to delinquent conduct: *Commonwealth v. Stroik*, 175 Pa.Super. 10, 15, 102 A.2d 239 [1954];

*Commonwealth v. Palmer,* 192 Pa.Super. 607, 609, 162 A.2d 34 [1960].

Thus, in *Commonwealth v. Doyle,* 275 Pa.Super. [373], 418 A.2d 1336 (1979) we affirmed a conviction of corruption of a minor where the basis for the charge was various acts of deviate sexual intercourse. *See also Commonwealth v. White,* 232 Pa.Super. 176, 335 A.2d 436 (1975) (conviction of corruption of minors where defendant attempted sexual assault of young girl). The point is extensively discussed in *Commonwealth v. Randall,* 183 Pa.Super. 603, 133 A.2d 276 (1957), *cert. denied,* 355 U.S. 954, ·8 S.Ct. 539, 2 L.Ed.2d 530 (1958). There the defendant argued that the predecessor of the present statute was so vague as to violate due process. In upholding the statute, this court, ERVIN, J., stated:

> The comprehensive words of the statute, "Whoever, being of the age of twenty-one years and upwards, by any act corrupts or tends to corrupt the morals of any child under the age of eighteen years" certainly convey concrete impressions to the ordinary person. The common sense of the community, as well as the sense of decency, propriety and the morality which most people entertain is sufficient to apply the statute to each particular case, and to individuate what particular conduct is rendered criminal by it.

*Id.* 183 Pa.Super. at 611, 133 A.2d at 280.

*Commonwealth v. Wolff,* 273 Pa.Super. 27, 31–32, 416 A.2d 1072, 1074 (1979), *overruled on other grounds, Commonwealth v. Anderson,* 379 Pa.Super., 589, 550 A.2d 807 (1988) (en banc). See also: *Commonwealth v. Mumma,* 489 Pa. 547, 555, 414 A.2d 1026, 1030 (1980); *Commonwealth v. Todd,* 348 Pa.Super. 453, 462 n. 2, 502 A.2d 631, 635–636 n. 2 (1985); *Commonwealth v. Burak,* 232 Pa.Super. 499, 504–505, 335 A.2d 820, 822 (1975); *Commonwealth v. White,* 232 Pa.Super. 176, 183, 335 A.2d 436, 439 (1975).

We reject appellant's argument that his conduct could not have corrupted or tended to corrupt his daughter because it was not the kind of conduct which would have aroused or

satisfied a sexual desire on the part of the child. As a matter of "[t]he common sense of the community, as well as the sense of decency, propriety and the morality which most people entertain," *Commonwealth v. Randall,* 183 Pa.Super. 603, 611, 133 A.2d 276, 280 (1957), *cert. denied,* 355 U.S. 954, 78 S.Ct. 539, 2 L.Ed.2d 530 (1958), quoted in *Commonwealth v. Wolff, supra* 273 Pa.Super. at 32, 416 A.2d at 1074, a jury could find that appellant's conduct tended to corrupt the morals of his minor daughter. It introduced this child to conduct which violated the sense of decency and propriety which most people entertain. Thus, we conclude that the evidence was sufficient to support the jury's finding that appellant violated the provisions of 18 Pa.C.S. § 6301.

■ The standard used to determine the competency of children to testify was stated in *Commonwealth v. McEachin,* 371 Pa.Super. 188, 537 A.2d 883 (1988), as follows:

When evaluating the competency of children to testify, we are guided by the following principles:

A witness is presumed competent to testify unless proven otherwise. *Commonwealth v. Riley,* 458 Pa. 390, 326 A.2d 384 (1974). When a proposed witness is under fourteen years of age, however, there must be a searching judicial inquiry as to mental capacity. *Commonwealth v. Short,* 278 Pa.Super. 581, 420 A.2d 694 (1980). This inquiry will probe the capacity to communicate, observe and remember, and a consciousness of the duty to speak the truth in proportion to the witness's chronological immaturity. *Rosche v. McCoy,* 397 Pa. 615, 156 A.2d 307 (1959).... [T]he judge holds the superior opportunity to evaluate the competency of a proposed child witness.... *Commonwealth v. Bailey,* 322 Pa.Super. 249, 469 A.2d 604 (1983).

*Commonwealth v. Stohr,* 361 Pa.Super. 293, 522 A.2d 589 (1987).

Our Supreme Court has mandated that in evaluating competency, the trial court must be satisfied that the witness has:

"(1) such capacity to communicate, including as it does both an ability to understand questions and to frame express and intelligent answers; (2) mental capacity to observe the occurrence itself and the capacity of remembering what it is that [the witness] is called to testify about; and (3) a consciousness of the duty to speak the truth."

*Rosche v. McCoy,* 397 Pa. 615, 620, 156 A.2d 307, 310 (1959) (emphasis in original). *See also Commonwealth v. Baker,* 466 Pa. 479, 485, 353 A.2d 454, 457 (1976).

*Commonwealth v. Hert,* 501 Pa. 174, 177, 460 A.2d 745, 747 (1983). Determination of competency will not be disturbed on appeal absent a clear abuse of discretion. *Id.*

*Id.* at 371 Pa.Super. 192–193, 537 A.2d at 885–886. See also: *Commonwealth v. Bristow,* 372 Pa.Super. 48, 54–56, 538 A.2d 1343, 1346–1347 (1988).

The trial court reviewed the issue of the child's competency in its opinion as follows:

The record will reveal that the Court, prior to the trial and in the absence of the jury, conducted a comprehensive competency hearing. This hearing involved extensive questioning by both prosecution and defense to determine whether the child understood the need to tell the truth. During that hearing the following exchange occurred between the assistant district attorney and the witness:

Q: Amy, do you know what book that is that you just put your hand on?

A: Uh-huh.

Q: What book is it?

A: Bible book.

Q: Who is in the Bible?

A: Jesus.

Q: Does Jesus want you to tell the truth or to tell a lie?

A: To tell the truth.

Q: What do you think Judge Kane wants you to do, to tell the truth or to tell a lie?

A: To tell the truth. (Vol. I, N.T. 6)

This line of questioning was followed by a series of leading questions designed to ascertain if the child knew the difference between the truth and a lie. For example; the child was asked by the female Assistant District Attorney, "If I told you that I was a boy, would that be the truth or a lie?" and she responded "a lie" (Vol. I, N.T. 7). At another point, "and if I told you that your grammy took the batteries out of the baby doll today, would that be the truth or a lie?" and the child answered, "the truth" (Vol. I, N.T. 7–8).

In response to these and other similar questions asked by both the Assistant District Attorney and counsel for the defendant, this Court satisfied itself that the child understood the difference between the truth and a falsehood and understood she had a duty to speak the truth. At that point we instructed counsel to inquire into the child's capacity to observe the occurrence with the requisite degree of accuracy, the child's ability to remember the event, and the child's ability to understand questions and communicate intelligent answers about the event. We were constrained to require such an inquiry by *Commonwealth v. Fultz,* 316 Pa.Super. 260, 462 A.2d 1340, 1343 (1983). We were satisfied following that extensive inquiry, which encompasses thirteen (13) pages in the Notes of Testimony, that this child, albeit four years old at the time of her testimony, indeed had the ability to observe what happened to her with accuracy and further exhibited the ability to remember that awful and unfortunate occurrence and speak about it intelligently (compare: *Commonwealth v. Short,* [278 Pa.Super. 581] 420 A.2d 694 (Pa.Super.1980)....

As a result of the inquiry into the child's competency to testify, we were satisfied that the Commonwealth had in fact established that this child was competent and it was only at that point that the trial commenced and the jury heard her testimony. We did however, grant counsel for

the defense a continuing objection and continued to take under advisement the competency issue, stating that if at any point in the proceedings in response to questions of counsel we determined our ruling to be in error or that the child during her questioning and testimony failed to demonstrate that capacity to observe or ability to remember or communicate or exhibited a lack of consciousness to tell the truth, we would reverse our ruling (Vol. I, N.T. 34–35). We listened again to the child's chilling testimony of the events that occurred, and at no point in the course of the proceedings did we feel this child was not competent to testify.

(Trial Court Opinion at pp. 4–7) (footnote omitted). After carefully reviewing the record in the instant case, we find no abuse of discretion in the trial court's ruling that the minor victim was competent to testify.

■ It is well settled that the trial court has broad discretion concerning the general conduct of the trial. *Commonwealth v. Thomas*, 346 Pa.Super. 11, 20, 498 A.2d 1345, 1349 (1985). See also: *Commonwealth v. Pittman*, 320 Pa.Super. 166, 172–173, 466 A.2d 1370, 1373 (1983); *Commonwealth v. Niemetz*, 282 Pa.Super. 431, 444–445, 422 A.2d 1369, 1376 (1980). "The examination of witnesses has always been and still remains subject to the control of the trial court in whom there is vested a large discretion." *Commonwealth v. Dress*, 354 Pa. 411, 414, 47 A.2d 197, 199 (1946). Moreover, while our research has disclosed no case law in this Commonwealth which passes upon the propriety of allowing a child witness to give testimony while sitting in the lap of an adult, the courts of other jurisdictions have said that in cases involving a child witness, "an attendant may be permitted to sit upon the witness stand near the witness, where the attendant is admonished that he [or she] is not permitted to make suggestions to the witness." 81 Am.Jur.2d, Witnesses, § 416, at 422. See: *Evers v. State*, 84 Neb. 708, 121 N.W. 1005 (1909), *overruled on other grounds, State v. Brockman*, 184 Neb. 435, 168 N.W.2d 367 (1969) (trial court in prosecution for statutory rape did not err in allowing adult lady friend of eight year old victim to

sit in close proximity to victim while she testified); *Gould v. State,* 71 Neb. 651, 99 N.W. 541 (1904) (no prejudicial error in prosecution for child stealing where trial court allowed father of child witness to sit near witness during her testimony, since record disclosed no improper conduct by father nor any influence by father on his daughter's testimony); *Rodgers v. State,* 30 Tex.App. 510, 17 S.W. 1077 (1891) (no error in prosecution for statutory rape in permitting aunt of ten year old victim to sit near witness during her testimony as trial judge had warned aunt not to speak to or prompt witness and aunt complied with warning); *State v. Keeley,* 8 Utah 2d 70, 328 P.2d 724 (1958) (trial court did not abuse its discretion in permitting school employee, to whom ten year old prosecuting witness had first reported assault by her stepfather, to sit near the witness during her testimony where record failed to disclose that witness had been influenced or coached in any way). More recently, the Supreme Court of Indiana determined that a defendant, who had been on trial for sexually abusing his two stepdaughters, had not been unduly prejudiced by the trial court's allowing one of the child victims to hold her mother's hand while giving testimony. *Baxter v. State,* 522 N.E.2d 362 (Ind.1988). In reaching this conclusion, the Court said that "[t]he trial court had discretion to allow special measures aimed at putting the young child at ease on the witness stand." *Id.* at 365 (citation omitted). See also: *Soap v. State,* 562 P.2d 889 (Okla.Crim.1977) (trial court did not err in permitting seven year old sodomy victim to hold mother's hand while giving testimony).

In the instant case, it does not appear that the child's testimony was in any way influenced by her grandmother. The trial court observed:

> The child at all times was visible to the Court, the jury and the defendant, and at no time did the grandmother speak to the child. Additionally, it is this Court's recollection that at no time did the child speak to or turn and look at the grandmother, except during the following questioning by defense counsel regarding the child's thoughts of her father:

Q: He must be a nasty person?

A: Yeah, he is.

Q: He is a nasty person?

A: Yeah.

Q: Grammy tells you that he's a nasty person?

MRS. PLUMLEY: Objection.

A: Did you, Grammy? Well, he is. (Vol. I, N.T. 30)

No rights of the defendant were infringed upon and the child testified in a relatively relaxed and comfortable manner, given the circumstances and nature of the testimony.

(Trial Court Opinion at pp. 8–9). Given the trial court's broad discretion, the tender age of the child, and the nature of her testimony, we cannot say that it was an abuse of the trial court's discretion to permit the child to sit in her grandmother's lap while giving testimony.[6]

THE JUDGMENT OF SENTENCE IS AFFIRMED.

6. Although we find no abuse of discretion under the circumstances of this case, we do not thereby place this Court's imprimatur on a general practice which permits children to testify while sitting in the lap of an adult. Such a practice is fraught with danger and is not to be encouraged. In the instant case, however, the record fails to disclose that appellant was prejudiced or that the witness' testimony was influenced by the presence of the grandmother.