STATE of Missouri, Plaintiff/Respondent,

v.

Arthur L. GOLLAHER, Jr., Defendant/Appellant.

Arthur L. GOLLAHER, Jr., Movant/Appellant,

v.

STATE of Missouri, Respondent/Respondent.

Nos. 66079, 67514.

Missouri Court of Appeals, Eastern District, Division Five.

Sept. 12, 1995.

Emmett D. Queener, Office of the State Public Defenders, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Becky O. Kilpatrick, Asst. Atty. Gen., Jefferson City, for respondent.

CRANE, Chief Judge.

A jury found Arthur L. Gollaher, Jr., guilty of one count of rape of a child less than fourteen years old in violation of § 566.030 RSMo (Cum.Supp.1993) and one count of sodomy of a child less than fourteen years old in violation of § 566.060 RSMo (Cum. Supp.1993). The trial court sentenced him to

consecutive terms of 25 years imprisonment on each offense. Gollaher filed a Rule 29.15 motion for post-conviction relief which was denied without an evidentiary hearing. Gollaher appeals the judgments of the trial court and the motion court. We have consolidated these appeals.

On direct appeal Gollaher contends that the trial court erred by admitting the victim's statements through the testimony of four witnesses. He asserts the trial court plainly erred in allowing the state's expert witness to comment on the victim's credibility and in allowing a state's witness to testify while holding a relative's hand. On appeal from the motion court, Gollaher claims that the motion court erred in finding trial counsel's failure to call several defense witnesses was not ineffective assistance of counsel. We affirm the judgments of the trial court and of the motion court.

Gollaher does not challenge the sufficiency of the evidence. The convictions arose out of the rape and sodomization of a seven-year-old girl left in Gollaher's care on June 21, 1993. The jury returned a verdict of not guilty on similar charges alleged to have occurred on June 12, 1993.

### DIRECT APPEAL

1. *Admission of Victim's Statements*

■ For his first point Gollaher asserts that the trial court erred in allowing four witnesses to testify to the victim's out-of-court statements. Gollaher contends that the repetition of the victim's out-of-court statements through multiple witnesses improperly bolstered the victim's testimony.

Prior to trial the state advised the court that it intended to solicit the victim's statements from witnesses pursuant to § 491.075.1 RSMo1994.[1] It also advised the court that it would call the witness to testify to her statements. Pursuant to this statute the trial court, outside the jury's presence, heard the testimony of Dr. Joan Shaw, who performed the sexual assault forensic examination, the victim's mother, the victim's aunt, and the investigating deputy who took the victim's statement. Each of these witnesses testified to separate statements the child victim made to the particular witness about the offense.

At the conclusion of the hearing, Gollaher objected to the admission of the statements. The trial court found that the time, content, and circumstances of the statements provided sufficient indicia of reliability and indicated it would admit the statements. Gollaher renewed his objection as each witness testified.

Gollaher argues that the victim's statements were improperly admitted through these witnesses because each witness totally repeated the victim's testimony, improperly bolstering it. In support of his argument Gollaher relies solely on *State v. Seever*, 733 S.W.2d 438 (Mo. banc 1987). In *Seever* the court held that the child victim's in-court testimony was improperly bolstered by the admission of the victim's videotaped statement prepared pursuant to § 492.304, because it effectively allowed the witness to testify twice. *Id.* at 441. *Seever* prohibited the use of videotapes prepared under § 492.304 to "wholly duplicate" the live testimony of a child witness. *State v. Silvey*, 894 S.W.2d 662, 672 (Mo. banc 1995).[2]

---

1. Section 491.075 RSMo1994 provides in part as follows:

A statement made by a child under the age of twelve relating to an offense under chapter 565, 566 or 568, RSMo, performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:
(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2)(a) The child testifies at the proceedings; or. . . .

2. After *Seever* the legislature amended § 492.304 by adding a new subsection 3 which provides:

3. If the visual and aural recording of a verbal or nonverbal statement of a child is admissible under this section and the child testifies at the proceeding, it shall be admissible in addition to the testimony of the child at the proceeding whether or not it repeats or duplicates the child's testimony.
(Cum.Supp.1992).

A child victim's out-of-court statements to third parties possess unique strengths and weaknesses and are distinct evidence from the child victim's trial testimony. *State v. Wright,* 751 S.W.2d 48, 53 (Mo. banc 1988). Statements admitted under § 491.075 do not improperly bolster a victim's live testimony where they are informal and not planned as a substitute for the victim's testimony. *Silvey,* 894 S.W.2d at 672. Such statements, taken as a whole, do not have the effect of allowing the victim to testify twice. *Id.* The statements are not barred by *Seever.*

In addition, the other witnesses' testimony had probative value apart from the victim's out-of-court statements. All four of the witnesses who testified to victim's hearsay statements described the circumstances surrounding the statements when made by the victim. The mother and the aunt explained the words the victim used in her out-of-court statements for certain body parts. The deputy testified to the persons present while he took victim's statement and to the lack of coercion or threats. Dr. Shaw testified to the persons present during her interview and examination, the questions used to elicit the child's statements, and the demeanor and behavior of the victim at the time of the statement. In these circumstances, the hearsay testimony is not completely duplicative of and had probative value beyond the victim's own testimony. *See State v. Tringl,* 848 S.W.2d 29, 31 (Mo.App.1993); *State v. White,* 873 S.W.2d 874, 877 (Mo.App.1994). Point one is denied.

### 2. *Opinion Testimony*

In his second point Gollaher contends that the trial court plainly erred in allowing Dr. Shaw to state her opinion on whether the victim had been sexually abused. Gollaher concedes that his claim was not preserved for review because he failed to object to Dr. Shaw's opinion testimony at trial or in his motion for new trial. We have reviewed the record for plain error and find none.

Dr. Shaw testified that the victim "gave a history in her own words very consistent with sexual assault, and that her behavior had been very consistent with a child who had been sexually assaulted, but that there were no physical findings." Dr. Shaw did not offer an opinion on whether victim had been abused by Gollaher nor did she offer an opinion as to whether victim was credible. *See, e.g., Silvey,* 894 S.W.2d at 671, a case decided on the merits.

The trial court did not plainly err in admitting Dr. Shaw's testimony. Point two is denied.

### 3. *Child Witness*

In his third point, Gollaher claims that the trial court plainly erred by allowing the victim's eight-year-old sister, who viewed the June 21 offense through a doorway, to testify while her grandfather stood by the witness box holding the witness's hand. After the child was sworn as a witness, but before any testimony was given, the prosecutor asked the court if the grandfather could stand with the witness and hold her hand while she testified. The court agreed. Gollaher contends that the grandfather's presence improperly bolstered the witness's testimony and created potential for the grandfather to communicate nonverbally with the witness. Gollaher does not argue that the grandfather in fact communicated with the witness, but only that potential for such communication existed. Because Gollaher did not object to or make any comment regarding this procedure at trial or in his motion for new trial, he requests plain error review.

To be entitled to relief under the plain error rule, Gollaher must show that the error affected his rights so substantially that a miscarriage of justice or manifest injustice will occur if the error is left uncorrected. *State v. Parker,* 856 S.W.2d 331, 332–33 (Mo. banc 1993). We find that his rights were not substantially affected by the grandfather's presence.

The trial court is vested with considerable discretion in regulating the manner of examination of witnesses. *See State v. Ross,* 680 S.W.2d 213, 219 (Mo.App.1984); *State v. Brown,* 847 S.W.2d 79, 80 (Mo.App. 1992). The exercise of that discretion should not be disturbed on appeal unless it has been abused or substantial harm has been improp-

erly done to the complaining party. *Ross,* 680 S.W.2d at 219.

In *State v. Pollard,* 719 S.W.2d 38, 42 (Mo.App.1986), a six-year-old sodomy victim began to cry while testifying. After a recess, the trial court allowed the victim's mother to sit inside the railing near the counsel table during the child's testimony. The court instructed the prosecutor to advise the mother not to communicate with the victim in any way. On appeal we held that trial courts should be given wide latitude in fashioning means to enable child victims "to recount their experiences without being overwhelmed by crippling emotional strain." *Id.* We then determined that defendant did not suffer prejudicial harm because the victim's mother was instructed not to communicate with him by gesture or otherwise, defendant did not indicate that she did so, and the mother's presence in that position was not in and of itself an undue influence upon the victim. *Id.*

Other appellate courts which have addressed similar situations have found the matter to be within the trial court's discretion. In *Soap v. State,* 562 P.2d 889, 892 (Ok.Crim.App.1977), the Oklahoma appellate court held the trial court did not abuse its discretion in allowing, over defendant's objection, the mother to stand by and hold the hand of a seven-year-old victim while the victim testified. In *Commonwealth v. Pankraz,* 382 Pa.Super. 116, 554 A.2d 974 (1989), the trial court allowed a four-year-old victim to testify while sitting in her grandmother's lap. The superior court found no abuse of discretion given the trial court's discretion over the conduct of trial, the child's tender age, and the nature of her testimony. *Id.* 554 A.2d at 980. Further, it did not appear that the child's testimony was influenced in anyway by her grandmother. *Id.* at 979. In *State v. Hoyt,* 806 P.2d 204, 210 (Utah App. 1991), the Utah appellate court found the trial court did not abuse its discretion to control the management of a trial when it allowed a victim's assistance representative to sit near a nine-year-old victim while testifying. The representative did not coach or actually encourage witness. In *Pressley v. State,* 197 Ga.App. 270, 398 S.E.2d 268, 269 (1990), the Georgia appellate court held that the trial court did not err by allowing the mother of nine-year-old to remain on the witness stand while the child victim testified where counsel stated that there was no objection and the record did not support a claim of prejudice.

Gollaher contends that the court abused its discretion because the grandfather's presence was prejudicial and violated his due process rights. To declare a denial of due process, we must find that a denial of fundamental fairness so infected the criminal process as to deny a fair trial. *State v. Clay,* 812 S.W.2d 872, 875 (Mo.App.1991). Whenever a courtroom arrangement is challenged as inherently prejudicial, the court must consider whether the practice presents an unacceptable risk that impermissible factors will come into play which might erode the presumption of innocence. *Holbrook v. Flynn,* 475 U.S. 560, 570, 106 S.Ct. 1340, 1346–47, 89 L.Ed.2d 525, 535 (1986). If the challenged practice is not found inherently prejudicial and the defendant fails to show actual prejudice, the inquiry is over. *Holbrook,* 475 U.S. at 572, 106 S.Ct. at 1347–48, 89 L.Ed.2d at 537.

These principles were applied by the Indiana Court of Appeals to a similar situation in *Stanger v. State,* 545 N.E.2d 1105 (Ind.App.1989). The court held that defendant was not inherently prejudiced where a parent or relative was allowed, without objection, to sit near a child witness while the child was testifying. *Stanger,* 545 N.E.2d at 1114. Further, no actual prejudice was shown. Accordingly, the court found no violation of due process. *Id.*

Here, Gollaher was not inherently prejudiced where the grandfather was allowed, without objection, to sit near the child witness while testifying. Defendant does not contend he suffered any actual prejudice, but argues only that there was the potential for prejudice. Accordingly, he has not shown a due process violation or abuse of discretion.

Gollaher further argues that the trial court should not have allowed the grandfather to stand by the witness and hold her hand without first making a threshold finding

that such a procedure was necessary to protect the welfare of a child witness. He argues that such a finding is required, citing *State v. Rulona*, 71 Haw. 127, 785 P.2d 615 (1990). We have examined *Rulona* and its predecessor, *State v. Suka*, 70 Haw. 472, 777 P.2d 240, (1989), in both of which the Hawaiian Supreme Court reversed the trial court because no finding of necessity was made before allowing a child witness to testify while in physical contact with a victim-witness counselor, in *Suka*, or a sexual abuse counselor, in *Rulona*. Gollaher does not direct us to any Missouri statute, rule or case requiring such a procedure. This claim is not properly preserved for review because no objection or request for a finding was made at trial. We will not review this type of contention for the first time on appeal.

Gollaher has shown no miscarriage of justice. Point three is denied.

## 29.15 APPEAL

Gollaher contends the motion court clearly erred when it overruled his Rule 29.15 motion in which he claimed ineffective assistance of counsel. He asserts that trial counsel was ineffective for failing to call five named witnesses and other unnamed employees of the Division of Family Services (DFS) on his behalf.

■■■ Our review of a denial of post-conviction relief is limited to whether the findings, conclusions and judgment of the motion court are clearly erroneous. Rule 29.15(j); *State v. Starks*, 856 S.W.2d 334, 336 (Mo. banc 1993). The motion court's findings, conclusions and judgment are clearly erroneous only if a review of the entire record leaves the reviewing court with the impression that a mistake has been made. *State v. Dunn*, 889 S.W.2d 65, 78 (Mo.App. 1994).

■■■ To obtain an evidentiary hearing a movant must meet three requirements: 1) the motion must allege facts, not conclusions, warranting relief; 2) the facts alleged must raise matters not refuted by the files and records in the case; and 3) the matters complained of must have resulted in prejudice to the movant. *Starks*, 856 S.W.2d at 336.

Where the claim is ineffective assistance of counsel for failure to investigate and produce witnesses, the movant must identify who the witnesses were, what their testimony would have been, whether or not counsel was informed of their existence, and whether or not they were available to testify. *State v. McGuire*, 892 S.W.2d 381, 386 (Mo.App. 1995). The movant must also show that the witness's testimony would have provided a viable defense. *Dunn*, 889 S.W.2d at 76. In the absence of such allegations, the motion does not show a movant was prejudiced by the alleged failure of counsel to secure the presence of witnesses. *McGuire*, 892 S.W.2d at 386.

■■■ In his motion Gollaher alleged he had located and disclosed to counsel the names of five witnesses and unnamed employees of DFS. He asserted that these witnesses would have testified that "the victim's parents had induced the false testimony of the victim and her sibling, and had planned to frame movant with false charges, in retaliation for movant's perceived involvement in a DFS reporting of their squalid home conditions." He further alleged that if the jury had heard this testimony it would have "cast[ ] the victim's family in a different light," and "there is a reasonable probability that a different outcome would have resulted at trial."

■■■ The motion fails to allege that the testimony would have provided a viable defense. The failure to call impeachment witnesses does not warrant relief where the facts, even if true, do not establish a defense. *State v. Roe*, 845 S.W.2d 601, 606 (Mo.App. 1992); *Dunn*, 889 S.W.2d at 76. The decision to impeach is presumed to be a matter of trial strategy. *Roe*, 845 S.W.2d at 606; *Dunn*, 889 S.W.2d at 76. To overcome the presumption that the decision not to impeach was trial strategy, movant must show how the impeachment would have provided him with a defense or would have changed the outcome of the trial. *Dunn*, 889 S.W.2d at 76. The motion alleges only that the testimony would merely impeach the credibility of the victim's family, it does not allege that the testimony could provide a defense to the charges. This point is denied.

The judgments of the trial court and of the motion court are affirmed.

SIMON and GRIMM, JJ., concur.