STATE of Missouri, Respondent,

v.

Merrill JACOBS, Appellant.

Merrill JACOBS, Appellant,

v.

STATE of Missouri, Respondent.

Nos. WD 45675, WD 47309.

Missouri Court of Appeals, Western District.

Dec. 14, 1993.

Raymond L. Legg, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

Before HANNA, P.J., and LOWENSTEIN and FENNER, JJ.

HANNA, Presiding Judge.

The defendant, Merrill Jacobs, was charged in the Circuit Court of Randolph County, Missouri, with two counts of the sale of cocaine, § 195.211, RSMo Supp.1990, and one count of the sale of marijuana, § 195.211, RSMo Supp.1990. The jury found the defendant guilty and the court sentenced the defendant as a class X offender to thirty years imprisonment for each count of the sale of cocaine and fifteen years imprisonment on the sale of the marijuana, with all sentences to run concurrently with each other.

The defendant filed a pro se Rule 29.15 motion which was denied following an evidentiary hearing. Notice of appeal was filed from the criminal convictions and the denial of the post-conviction motion and they have been consolidated here.

The defendant does not challenge the sufficiency of the evidence and, therefore, the factual statement viewed in the light most favorable to the verdicts is brief. On August 21, 1990, an undercover narcotics officer with the Missouri State Highway Patrol met the defendant in Moberly, Missouri, and discussed buying some drugs. The defendant told the officer that in a few days they could go to Columbia, Missouri, where the defendant could purchase a kilogram of crack cocaine for approximately $13,000. On that day, two undercover narcotics officers with the patrol and a confidential informant went with the defendant to Columbia. When they arrived in Columbia, the defendant's sister-in-law accompanied them to Douglas Park where she made contact with a Christopher Leach who led them to his house so the defendant could purchase crack cocaine.

After the defendant purchased the crack cocaine from Mr. Leach, the defendant, the undercover officers and the confidential informant returned to Moberly. The defendant invited the others into his house where he sold the undercover officers $20 worth of marijuana and $100 worth of crack cocaine. A few days later a third undercover officer met the defendant in Moberly for the purpose of buying drugs. The defendant sold this officer $80 worth of crack cocaine.

The first point on appeal arises from the criminal trial. During the voir dire examination the assistant prosecuting attorney asked this question of the venire:

Q. Okay. Do you understand that this burden of beyond a reasonable doubt applies only to the elements that are

charged in this case? In other words, there are three counts that are charged here in the petition. Youre going to hear testimony from a variety of witnesses, and their stories may not exactly jibe. Its very infrequent that you find people that will come in and tell you exactly the same story, whether its witness A and B.

Defendant objected that the prosecutor's question was discussing the sufficiency of the evidence during voir dire. At the bench, defense counsel gave the additional reason that counsel was "arguing the case." The objection was overruled and this specific question was then asked:

Q. Okay. Im going to repeat that last question again. Do you understand that the burden of reasonable doubt applies only to the elements that are given in the instructions? Youre going to have witnesses here that are going to give you different testimony, and you cant let that interfere. You need to consider the reasonable doubt instruction as it—or the burden as it applies to the case, as it applies to the elements that are charged in this case and not as to the conflicts in evidence. Is that understood?

On appeal, the defendant expands his argument and criticizes the question as an attempt to inform the jury of the law. He further argues that the question misstated and was contrary to the reasonable doubt standard and the jury's role in evaluating the evidence. In the argument portion of the defendant's brief, he adds that the state's question attempted to define "reasonable doubt." The state responds that counsel may probe the venire to determine the existence of any prejudice that might prevent a prospective juror from following the court's instructions, citing *State v. White*, 699 S.W.2d 19, 21 (Mo.App.1985), and may also inquire on voir dire as to whether the venirepersons can follow the court's instructions which necessarily would be presented in the case.

*State v. Dixon*, 717 S.W.2d 847, 848 (Mo. banc 1986).[1]

■ While it is error for the state to define "beyond a reasonable doubt," *State v. Carmack*, 633 S.W.2d 218, 219 (Mo.App. 1982), it is not error for the state to discuss the concept of "beyond a reasonable doubt" without attempting to define it for the jury. *State v. Hatcher*, 835 S.W.2d 340, 345 (Mo. App.1992). In *State v. Brown*, 822 S.W.2d 529, 530 (Mo.App.1991), the court allowed the prosecutor's attempt to limit the reasonable doubt instruction over the defendant's objection that the state's question attempted to define reasonable doubt. The appellate court in that case gave a lukewarm approval to the prosecutor's attempt to explain that proof beyond a reasonable doubt did not apply to matters other than elements of the crime. The court did not find that the question erroneously defined beyond a reasonable doubt and we agree that it does not. The question is ill advised because it tends to confuse the jury with respect to its obligation to resolve conflicts in the testimony. See *State v. Hawkins*, 703 S.W.2d 67, 70 (Mo. App.1985). It is similar to those "questions" frequently asked on voir dire which are not designed to elicit a response from the venire, but rather are attempts to advise the panel of the limitations of the reasonable doubt instruction.

There are two essential responsibilities the jury must satisfy before returning a guilty verdict. First, it must find the evidence meets the legal requirement of proof beyond a reasonable doubt of each element of the crime. Second, it must determine the credibility of the witnesses' testimony. Because these charges are so intertwined, there is great difficulty in phrasing a question that is truly intended to probe the bias of the venire so as to comply with the correct purpose of voir dire examination. When this chore of proper phrasing fails, the question tends to confuse rather than enlighten a panel of lay persons.

■ It is not an incorrect statement of the law that the reasonable doubt instruction

1. The parties do not argue and we do not discuss whether the question is erroneous because it refers to "the burden of reasonable doubt." The proper term is the burden beyond a reasonable doubt. It is not clear to which "instructions" it makes reference, although the first question does refer to the verdict directors.

applies only to the elements of the crime. Attempting to distinguish the jury's duty of finding each element of a crime beyond a reasonable doubt from its responsibility to determine the credibility of witnesses tends to confuse and serves no useful purpose. The question is similar to the one where the venire is asked if they understand the difference between the degrees of proof set forth in the civil and criminal instructions; i.e., beyond a reasonable doubt and by a preponderance of the evidence. Questions of this sort are not designed to probe the fine legal concepts of "beyond a reasonable doubt," to determine whether the jury can follow the court's instructions, or to inquire whether they have any preconceived bias and prejudice. It is seldom that a member of the panel responds and counsel, of course, is not really expecting an answer. Questions of this type accomplish little, if anything, and do more to confuse the venire than enlighten counsel. The question was argumentative and defense counsel's objection should have been sustained.

Even though it was error to allow the question, no prejudice resulted to the defendant. Very simply, the question was incomprehensible and, therefore, not prejudicial. Further, we have reviewed the evidence and the essential facts of the sales were not seriously contested. The testimony of the defendant's guilt renders any error harmless. Any conflict in the testimony of the witnesses was insignificant, or dealt with matters other than the elements of the crimes for which the defendant was convicted. Point denied.

The defendant's next complaint arises from the court's denial of his Rule 29.15 motion. He argues that juror David Yancey failed to disclose during voir dire that he was aware of the defendant's reputation in the community and therefore, could not afford the defendant the presumption of innocence. The defendant alleges that he and Mr. Yancey had physical confrontations as young adults. The defendant concedes he recognized the juror after the jury was sworn and discussed it with his trial counsel. The attorney had no recollection of the discussion and the trial court found that the defendant had not advised counsel. At the hearing on the motion, Mr. Yancey acknowledged knowing the defendant but testified that he followed the court's instructions and based his verdict strictly on the evidence. The motion court so found and also noted that the claim was not cognizable in a Rule 29.15 proceeding.

Appellate review of the denial of a post-conviction motion is limited to a determination of whether the findings of fact and conclusions of law issued by the motion court are clearly erroneous. Rule 29.15(j); *State v. Vinson*, 800 S.W.2d 444, 448 (Mo. banc 1990). Findings and conclusions are clearly erroneous only if, after a review of the entire record, the court is left with the definite and firm impression that a mistake has been made. *Murray v. State*, 775 S.W.2d 89, 90 (Mo. banc 1989), cert. denied, 493 U.S. 1093, 110 S.Ct. 1171, 107 L.Ed.2d 1073 (1990).

The motion court denied the Rule 29.15 motion maintaining that this claim was not cognizable in a Rule 29.15 proceeding because the defendant failed to make the required showing that he had no knowledge of the improper selection until after his trial. The court's ruling of the law was correct. See *Stallings v. State*, 784 S.W.2d 862, 863 (Mo.App.1990); *Forshee v. State*, 763 S.W.2d 352, 354 (Mo.App.1988). Point denied.

Judgment of conviction and denial of Rule 29.15 are affirmed.

All concur.