STATE of Missouri, Plaintiff/Respondent,

v.

Lamorne McNEAL, Defendant/Appellant.

Lamorne McNEAL, Movant/Appellant,

v.

STATE of Missouri,
Respondent/Respondent.

Nos. 60867, 64323.

Missouri Court of Appeals,
Eastern District,
Division Two.

May 31, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 28, 1994.

Robert E. Steele, Jr., Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jennifer A. Glancy, Asst. Atty. Gen., Jefferson City, for respondent.

CRANE, Presiding Judge.

A jury found Lamorne McNeal guilty of second degree burglary in violation of § 569.-170, RSMo 1986. The trial court found him to be a prior and persistent offender and sentenced him to fifteen years imprisonment. McNeal filed a *pro se* motion for post-conviction relief under Rule 29.15. His appointed attorney timely filed an amended motion. The motion court denied both motions after

an evidentiary hearing. McNeal appeals both the judgment of the trial court and the order of the motion court.

On his direct appeal McNeal contends that the trial court erred in overruling his *Batson*[1] motion without requiring the state to give reasons for its strikes. He also contends the court erred in denying his alternative motions for acquittal and new trial because the state failed to prove beyond a reasonable doubt that he unlawfully entered an inhabitable structure for the purpose of committing the crime of stealing. We deny the latter point but remand the case to the trial court for further proceedings on the *Batson* motion.

In his appeal from the order of the motion court, McNeal asserts that the motion court erred in denying his motion for post-conviction relief after an evidentiary hearing. In his motion he claimed he was denied his right to effective assistance of counsel because his attorney failed to move to sever the trial of his case from that of his co-defendant. He also asserts that the motion court erred in denying him relief because the trial court entered an order correcting the judgment without jurisdiction, a claim which was not made in his 29.15 motion. We affirm the order of the motion court.

### DIRECT APPEAL

The evidence viewed in the light most favorable to the verdict reveals that on December 4, 1989 at approximately 8:00 p.m., four St. Louis City police officers were in the backyard of a house in the 4100 block of Rosalie conducting surveillance on a house in the 4100 block of Carter when they heard the sound of a window being raised on the rear porch of the Rosalie residence. Two officers approached the house where they heard two persons inside discuss how to get a TV out of the house and plan to climb out the window. The officers then observed McNeal and Hunter exit the window. After the officers identified themselves, McNeal, who was wearing white gloves, fled down the alley. Before apprehending him, two officers observed McNeal throw away some items from his pocket which turned out to be a camera, a

TV remote and a cassette tape from the Rosalie residence. At the Rosalie residence the front door glass had been broken, the TV had been placed by the front door, and the house had been ransacked. The owner's stereo and speakers were tied up in a trash bag. Both McNeal and Hunter were charged with burglary in the second degree and were tried together under Rule 24.06(b).

■ For his first point on direct appeal, McNeal contends that the trial court erred in overruling his *Batson* motion without considering or requiring the state to provide reasons for its use of eight of its peremptory strikes against African–American venirepersons. We agree.

After the parties had made their peremptory strikes, the court asked if either side had motions before the jury was impaneled. Co-defendant Hunter's counsel moved for a mistrial or to quash the jury panel on the following grounds:

> that the prosecutor has exercised his peremptory challenges to strike members of the defendant's race in violation of the equal protection clause and the Sixth Amendment to the United States Constitution. Both defendants in this case are members of a cognizable racial group; they are both Black Americans. The State has used his peremptory challenges, he's used—since there were two defendants in this case he had twelve, he used eight of his twelve strikes on Black venire. There were a total of twelve Blacks on the panel. That left, I believe, four for the defense to consider. And I would also like the Court to note peremptory challenges are a practice that alllows [sic] someone who is of the mind to discriminate to discriminate. I am aware the prosecutor in this case, Mr. Vincent, is also a Black American, but I do believe there is a logical inference in this case he has struck Blacks to discriminate against our clients in this case. I don't feel that the strikes were made in a race neutral manner.

McNeal's counsel joined in this motion and the grounds therefor.

1. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

After hearing further argument, the trial court ruled that under *State v. Hunter,* 802 S.W.2d 201 (Mo.App.1991), the state did not have to give reasons for its peremptory strikes. It found that the deviation of percentage of African–Americans from approximately 38% on the venire to 33⅓% on the jury was not so great as to require the state to give racially neutral reasons. The court advised that its ruling was also based on the circumstances that the defendants and the alleged victim were African–Americans and two of the four arresting officers were African–Americans. The court denied the *Batson* motion.

■ On appeal the state argues that McNeal failed to preserve his *Batson* challenge because he asked for the panel to be quashed or for a mistrial rather than that the strikes be quashed. As the state points out, this court has declined to review a *Batson* challenge where a defendant sought to quash the jury rather than particular strikes, on the basis that the proper remedy is to quash the strikes. *See State v. Tims,* 865 S.W.2d 881, 884 (Mo.App.1993); *State v. Sutherland,* 859 S.W.2d 801, 803 (Mo.App.1993). However, we believe review is appropriate in this case.

This case was tried in May, 1991. At that time, an appropriate remedy for a *Batson* violation was to quash the jury. *See State v. Hudson,* 815 S.W.2d 430, 432 (Mo.App.1991).[2] In *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), the Supreme Court extended *Batson* to protect minority jurors from discriminatory strikes. In *State v. Parker,* 836 S.W.2d 930 (Mo. banc 1992), the supreme court held that after *Powers,*

[q]uashing the panel and commencing the jury selection process anew does not really correct the error. The defendant is simply accorded a new opportunity to obtain a jury composed according to race-neutral criterion; the discrimination endured by the excluded venirepersons goes completely unredressed since they remain wrongfully excluded from jury service.

*Id.* at 936.

After its decision in *Parker,* the Missouri Supreme Court reiterated that, "[a]fter *Par-*

*ker,* however, the proper objection is to the striking of a particular venireperson or venirepersons." *State v. Starks,* 834 S.W.2d 197, 198 n. 1 (Mo. banc 1992). *Starks* involved an appeal from a case which was tried before *Parker.* On appeal, the state argued to the supreme court that a defendant had not preserved a *Batson* claim because he had moved for a mistrial rather than "to quash the jury", which was the pre-*Parker* remedy. The court responded:

Where the defense attorney clearly intends to assert a *Batson* challenge and the court fully understands that the objection is to the jury's being sworn, the form of the motion is not fatal to appellate review. There could have been no misconception in this case by the trial court of the basis for appellant's objection.

*Id.* The court reviewed the *Batson* claim and remanded for a hearing on the state's reasons for its strikes.

The state relies on *State v. Grim,* 854 S.W.2d 403, 416 (Mo. banc 1993), to support its argument that McNeal is not entitled to review of his *Batson* claim. In *Grim* the court again repeated that the proper remedy for the discriminatory use of peremptory strikes is to quash the strikes and permit those members of the venire stricken for discriminatory reasons to sit on the jury if they otherwise would. However, in that case, which was tried before *Parker,* defense counsel made no *Batson* motion at all because the defense attorney did not want the entire jury panel quashed. The court held that the defendant's point, complaining that the trial court erred in indicating it would quash the jury if a motion were made, had not been preserved for review because no *Batson* motion challenging the strikes had been made. The court did not address the situation, as it did in *Starks,* where a *Batson* objection had been made, but the wrong relief had been sought.

McNeal's *Batson* motion sought an appropriate remedy when it was made. In *Starks* the supreme court considered whether the pre-*Parker Batson* motion before it was properly preserved under the law prior to

---

**2.** This was the remedy sought in *Batson.*

*Parker.* Although it noted that the proper objection after *Parker* was to the striking of particular venirepersons, the court did not apply that rule to the motion before it. Holding that the issue was preserved, the court reviewed the *Batson* claim on the merits. In this case, defense counsel made a *Batson* motion which specifically sought an established pre-*Parker* remedy and constituted an objection to the jury's being sworn, as required in *Starks.* Accordingly, we will review McNeal's *Batson* claim on the merits.

In ruling on McNeal's *Batson* claim, the trial court denied the motion without requiring the state to give race-neutral explanations for its challenges. In *State v. Antwine,* 743 S.W.2d 51, 64 (Mo. banc 1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988), the Missouri Supreme Court required Missouri trial courts, when considering *Batson* challenges, to consider the state's explanations in determining whether a *prima facie* case had been made. The procedure required by *Antwine* engendered confusion because it attempted to consolidate the three step-*Batson* inquiry into one contemporaneous proceeding. As a result of this difficulty, the Missouri Supreme Court and the court of appeals issued opinions in which these courts appeared to abandon *Antwine* in favor of a three-step *Batson* analysis. Thus, in *State v. Burgess,* 800 S.W.2d 743, 747 (Mo. banc 1990), the Missouri Supreme Court held that neutral explanations were not required where a defendant failed to establish that the relevant circumstances raised an inference of discrimination. *See also State v. Hunter,* 802 S.W.2d 201, 204 (Mo.App.1991).

■ At the time of McNeal's trial in May, 1991, the most recent Missouri cases held that any inference of discrimination was undercut where a substantial number of a minority group remained on a jury. Decisive reliance was placed on the fact that minority jurors remained on the jury. *See Burgess,* 800 S.W.2d at 747; *Hunter,* 802 S.W.2d at 204; *State v. Crump,* 747 S.W.2d 193, 196 (Mo.App.1988). In June, 1991 this court held that after *Powers* the percentage of minority members left on the jury ceased to be a circumstance which "undercut" any inference

of discrimination. *State v. Robinson,* 811 S.W.2d 460, 462 (Mo.App.1991). Now the state's failure to use all of its strikes against venirepersons of a racial minority and the presence of a racial minority on a defendant's jury are relevant factors for consideration only to the extent that they indicate that race was not the prosecutor's motive for the challenged strikes. *Parker,* 836 S.W.2d at 940.

In *Parker,* the Missouri Supreme Court recognized the procedural confusion stating, "The apparent abandonment of *Antwine* in favor of traditional *Batson* analysis has left the trial courts without clear guidance as to the proper procedure to follow when a defendant raises a *Batson* challenge." 836 S.W.2d at 939. *Parker,* which was decided a little over a year after the McNeal trial, readopted the *Antwine* procedure and specifically directed the trial court to take the following actions when confronted with a timely *Batson* motion:

1. The defendant must raise a *Batson* challenge with regard to one or more specific venirepersons struck by the state and identify the cognizable racial group to which the venireperson or persons belong.

2. The trial court will then require the state to come forward with reasonably specific and clear race-neutral explanations for the strike.

3. If acceptable reasons are articulated, the defendant has the burden to show that the proferred reasons were pretextual and the strikes were racially motivated.

*Parker,* 836 S.W.2d at 939. The *Parker* court found that the *prima facie* showing requirement under *Batson* is not constitutionally required and that Missouri trial courts shall no longer make such a finding, but must conduct an evidentiary hearing to determine whether a prosecutor's strike was racially motivated when a *Batson* challenge has been properly raised. *Id.* at 940.

■ We conclude that under *Parker* this case must be remanded for an evidentiary hearing on the *Batson* motion to determine whether the prosecutor used the state's strikes in a discriminatory manner. The

three steps outlined in *Parker* must be followed. In considering whether purposeful discrimination has occurred, the trial court should take into account the relevant factors set out in *Parker* at 939–40. The trial court shall certify to this court a record of its proceeding and its finding. The direct appeal is remanded for a hearing consistent with the holding of this opinion.

■ For his remaining point on direct appeal, McNeal asserts the trial court erred in denying his alternative motions for judgment of acquittal or for a new trial on the ground that the state's evidence was insufficient to establish his guilt because it failed to prove beyond a reasonable doubt that McNeal entered the residence for the purpose of stealing or that he aided or acted with another to commit the crime.

■ On review of a motion to direct a verdict of acquittal, we look only to whether there was sufficient evidence from which reasonable persons could have found defendant guilty as charged. *State v. Nelson,* 818 S.W.2d 285, 288 (Mo.App.1991). We view the evidence and all reasonable inferences therefrom in the light most favorable to the state and we disregard all contradictory evidence and inferences. *Id.* We review the trial court's denial of a motion for new trial for abuse of discretion; that is, when the trial court's ruling clearly offends the logic of the circumstances or when it becomes arbitrary and unreasonable. *State v. Kelly,* 851 S.W.2d 693, 696 (Mo.App.1993).

■ McNeal argues under this point that the evidence was insufficient because he denied having entered the house and the police officers' contrary accounts of the crime were incredible. Questions of witness credibility are for the jury, which may believe all, some, or none of any witness's testimony in arriving at its verdict. *Nelson,* 818 S.W.2d at 288. We do not review credibility issues on appeal. *State v. Jenkins,* 776 S.W.2d 59, 63 (Mo.App.1989). Accordingly, this point is denied.

### POST–CONVICTION APPEAL

■ McNeal raises two issues on appeal from the motion court's denial of relief under Rule 29.15. McNeal first challenges the trial court's jurisdiction to enter a "corrected" judgment after he filed his notice of appeal.

McNeal did not raise this issue in his 29.15 motion and therefore is procedurally barred from obtaining review on appeal. *State v. Ervin,* 835 S.W.2d 905, 929 (Mo. banc 1992). We have *ex gratia* examined the file relating to this issue. At the sentencing hearing the trial court found on an undisputed record that McNeal had previously served 120 days in a penal institution and was subject to a minimum term. However, in filling out the printed sentence and judgment form, the trial court did not check the box containing this finding. After McNeal filed his notice of appeal, the trial court filed a "corrected sentence and judgment" in which it did check the box containing the finding that McNeal was "(a Class X offender) also subject to a minimum prison term" pursuant to § 558.-019, RSMo Supp.1990. Rule 29.12(c) provides that clerical mistakes in judgments arising from oversight or omission may be corrected by the court at any time. The failure to check the box for the finding that McNeal was subject to a minimum term was such a clerical error where the judge had in fact made the finding on the record. However, we note that in checking the box for this finding on the "corrected sentence and judgment" form, the trial court left the words "(a class x offender)" in the finding. If this was another clerical error, McNeal can move the trial court under Rule 29.12(c) for a correction.

■ McNeal next contends that he was denied effective assistance of counsel when his attorney failed to file a motion to sever defendants. McNeal argues that he was prejudiced because the jury heard evidence that the victim saw the co-defendant, Hunter, walking back and forth in the alley before the burglary and also heard evidence of Hunter's post-arrest statement in which he admitted being in the victim's home and that he exited through a rear window.

■ Our review of the motion court's order is limited to a determination of whether the findings, conclusions and judgment of

the motion court are clearly erroneous. Rule 29.15(j); *State v. Childers,* 801 S.W.2d 442, 446 (Mo.App.1990). The order is clearly erroneous only if a review of the entire record leaves this court with the definite and firm impression that a mistake has been made. *Jones v. State,* 773 S.W.2d 156, 157–58 (Mo. App.1989).

To prevail on a claim of ineffective assistance of counsel, a movant must show, by a preponderance of the evidence, both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To prove deficient performance, a movant must prove that counsel's acts or omissions were outside the range of professionally competent assistance. *Id.* To do this the movant must overcome the presumption that counsel's challenged acts or omissions were sound trial strategy. *State v. Stepter,* 794 S.W.2d 649, 656 (Mo. banc 1990). In order to establish prejudice a movant must show that there is a reasonable probability that, but for counsel's errors, the fact finder would have had a reasonable doubt about movant's guilt. *Childers,* 801 S.W.2d at 447.

McNeal has failed to meet his burden on either prong of the *Strickland* test. Whether to file a motion to sever is part of a counsel's trial strategy which we will not second guess on appeal. At the hearing McNeal did not present any evidence on the severance issue. He has not overcome the presumption that counsel's strategy was sound. *Childers,* 801 S.W.2d at 447; *Smith v. State,* 628 S.W.2d 393, 395 (Mo.App.1982).

Furthermore, McNeal did not demonstrate that he was prejudiced by the failure to sever. He admits in his brief that the evidence of which he complains did not implicate him. The court gave MAI–CR3d 304.18 which instructs the jury to give separate consideration to each defendant and to decide each case against each defendant only on the evidence and law applicable to that defendant. There is nothing in the record to indicate that the jury was unable to distinguish the evidence relating to Hunter's guilt from the evidence relating to McNeal's guilt.

The motion court's findings and conclusions are not clearly erroneous. This point is denied.

The case on direct appeal is remanded for a *Batson* hearing. In all other respects it is affirmed. The order of the motion court is affirmed.

KAROHL and CRAHAN, JJ., concur.