**STATE of Missouri, Plaintiff/Respondent,**

v.

**Christopher DUNN, Defendant/Appellant.**

**Christopher DUNN, Movant/Appellant,**

v.

**STATE of Missouri,
Respondent/Respondent.**

Nos. 60805, 64621.

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 25, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 30, 1994.

Application to Transfer Denied
Jan. 24, 1995.

Craig A. Johnston, Office of the State Public Defender, Columbia, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Traci J. Sanders, Asst. Atty. Gen., Jefferson City, for respondent.

CRANE, Presiding Judge.

A jury found Christopher Dunn guilty of first degree murder, in violation of § 565.020.1 RSMo 1986, two counts of first degree assault, in violation of § 565.050 RSMo 1986, and three counts of armed criminal action, in violation of § 571.015 RSMo 1986. The trial court found him to be a prior and persistent offender and sentenced him to life imprisonment without parole on the first degree murder count, thirty years imprisonment on each of the assault counts, and ten years on each of the armed criminal action counts, all sentences to be served consecutively.

Dunn filed a *pro se* motion for post-conviction relief under Rule 29.15. His appointed attorney filed a statement that she had investigated "all allegations raised by movant in addition to those in movant's *pro se* motion" and concluded there were no additional grounds to be raised in an amended motion. The motion court denied the *pro se* motion after an evidentiary hearing. Dunn appeals

both the judgment of the trial court and the order of the motion court.

On his direct appeal Dunn contends that the trial court erred in overruling his *Batson*[1] motion without requiring the state to give reasons for its strikes. He also contends the court erred in overruling his objection to the state's comments in voir dire and plainly erred in not declaring a mistrial *sua sponte* with respect to the state's comments in closing argument. He further challenges the reasonable doubt instruction and grand and petit jury panel selection. We remand the case to the trial court for further proceedings on the *Batson* motion and deny the remaining points.

In his appeal from the order of the motion court, Dunn asserts that the motion court erred in failing to inquire *sua sponte* into counsel's reasons for not filing an amended motion, in failing to make factual findings and legal conclusions on all issues raised in his *pro se* motion, and in adopting the state's proposed findings verbatim. Dunn also contends the motion court erred in denying his motion for post-conviction relief after an evidentiary hearing because he was denied his right to effective assistance of counsel in that his attorney failed to investigate and call certain alibi witnesses. We affirm the order of the motion court.

*DIRECT APPEAL*

The sufficiency of the evidence is not in dispute. The evidence, viewed in the light most favorable to the verdict, reveals that shortly after midnight on May 19, 1990, Dunn ran by a house in the 5600 block of Labadie in the City of St. Louis and shot a firearm at three fifteen year old boys who were on the front porch. The shots hit one of the boys who was taken to the hospital where he died from a gunshot wound at 2:21 a.m. the same day. The other two victims knew Dunn and identified him.

*A. Batson Motion*

For his first point on direct appeal, Dunn contends that the trial court erred in overruling his *Batson* motion without considering or requiring the state to provide reasons for its use of a peremptory strike against an African–American venireperson. We agree.

After the parties had made their peremptory strikes, defense counsel asked the court to strike the jury panel and informed the court that she was making a motion under *State v. Antwine*[2] and *Batson* because the state had struck an African–American male from the jury panel. Dunn's counsel advised the court that *Antwine* required the state to give reasons for the strikes before the court could rule. After hearing further argument, the trial court ruled that the state did not have to give reasons for its strike because one strike out of six did not disturb the numerical composition of the jury. The court also noted that the defendant, the three victims, and one of the investigating officers was African–American. The court denied the *Batson* motion.

■ On appeal, the state asserts that Dunn failed to preserve his *Batson* challenge because he asked the court to quash the panel whereas he should have asked the court to disallow the offending strike. We have recently reviewed and rejected a similar contention in *State v. McNeal*, 880 S.W.2d 325 (Mo.App.1994).

The defendant in *McNeal* was tried in May, 1991. At that time, an appropriate remedy for a *Batson* violation was to quash the jury. *Id.* at 328. However, as noted in *McNeal*, after the Missouri Supreme Court's decision in *State v. Parker*, 836 S.W.2d 930, 936 (Mo. banc), *cert. denied*, — U.S. —, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992), "the proper objection is to the striking of a particular venireperson or venirepersons." *McNeal*, 880 S.W.2d at 328 (quoting *State v. Starks*, 834 S.W.2d 197, 198 n. 1 (Mo. banc 1992)). We held that *McNeal*'s pre-*Parker* motion sought an appropriate remedy when it was made and we reviewed *McNeal*'s *Batson* claim on the merits. *Id.* at 329.

---

1. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

2. 743 S.W.2d 51 (Mo. banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988).

This case was tried in July, 1991, which was also before *Parker* was decided. As in *McNeal* defense counsel made a *Batson* motion which specifically sought an established pre-*Parker* remedy and constituted an objection to the jury's being sworn. Dunn has thus preserved his *Batson* claim for review.

In ruling on Dunn's *Batson* claim, the trial court denied the motion without requiring the state to give race-neutral explanations for its challenges. In *Antwine* the Missouri Supreme Court required Missouri trial courts, when considering *Batson* challenges, to consider the state's explanations in determining whether a *prima facie* case had been made. As we set out in *McNeal*, the procedure required by *Antwine* engendered confusion because it attempted to consolidate the three-step *Batson* inquiry into one contemporaneous proceeding, resulting in appellate decisions which appeared to abandon *Antwine* in favor of a three-step *Batson* analysis. *McNeal*, 880 S.W.2d at 329.

■ However, in *Parker*, the Missouri Supreme Court readopted the *Antwine* procedure and specifically directed the trial court to take the following actions when confronted with a timely *Batson* motion:

1. The defendant must raise a *Batson* challenge with regard to one or more specific venirepersons struck by the state and identify the cognizable racial group to which the venireperson or persons belong.

2. The trial court will then require the state to come forward with reasonably specific and clear race-neutral explanations for the strike.

3. If acceptable reasons are articulated, the defendant has the burden to show that the proffered reasons were pretextual and the strikes were racially motivated.

*See Parker*, 836 S.W.2d at 939. *Parker* held that *Batson's prima facie* showing requirement is not constitutionally required and that Missouri trial courts should no longer make such a finding. *Id.* at 940. Instead, when a party properly raises a *Batson* challenge, the trial courts must conduct an evidentiary hearing to determine whether a prosecutor's

strike was racially motivated. *Id.* The court remanded that case to the trial court for a *Batson* hearing. *Id.* at 940–41.

■ We conclude that under *Parker* this case must be remanded for an evidentiary hearing on the *Batson* motion to determine whether the prosecutor used his strike in a discriminatory manner. The hearing should follow the three steps outlined in *Parker*. In considering whether purposeful discrimination has occurred, the trial court should take into account the relevant factors set out in *Parker*. *Id.* at 939–40. The trial court shall certify to this court a record of its proceeding and its finding. The direct appeal is remanded for a hearing consistent with the holding of this opinion.

### B. Objection to Voir Dire Comment on Burden of Proof

■ For his second point Dunn asserts the trial court abused its discretion in overruling his objection to the state's comments during voir dire concerning reasonable doubt. On appeal he attacks the comments for many reasons. At trial he objected on the ground that the comments constituted an improper statement of law. We are limited on review to the ground on which he based his objection. *State v. Dampier*, 862 S.W.2d 366, 376 (Mo.App.1993).

Dunn objected to the following statements made during voir dire:

[Prosecutor]: But in this criminal case as in every criminal case, the state represented by myself, has the burden of proof. I have the burden of presenting evidence to you. Everybody understand that? Any problem with that? And the burden I must meet is proof beyond a reasonable doubt. And that burden goes to the elements of the crime.

At this point defense counsel objected and the court overruled the objection. The prosecutor continued:

[Prosecutor]: Again, in any crime there are specific elements or acts which must be proved before you can find the defendant guilty. There may be one act, two acts, three acts, four acts; just depends on the crime. And the Judge will instruct you in

connection with what those elements are at the conclusion of the case. But that is what my burden goes to, beyond a reasonable doubt. Not all doubt or any doubt, but a reasonable doubt. Does anybody have any problem with that?

▮ The trial court is given broad control over the nature and extent of voir dire questioning; we do not interfere unless the record shows a manifest abuse of that discretion. *State v. Roe,* 845 S.W.2d 601, 605 (Mo. App.1992). While counsel may not define reasonable doubt for the jury, the state may discuss the concept with the jury. *Roe,* 845 S.W.2d at 604. We use a three part test to distinguish definition from discussion. For the comments to constitute reversible error, 1) the state must state an incorrect definition of reasonable doubt before the jury, 2) defense counsel must object, and 3) if the objection was overruled, the state must continue to define reasonable doubt. *Id.*

▮ In *Roe* the state said on voir dire:

All right, and the kind of proof I have to give you, the Judge has talked about, and that's beyond a reasonable doubt, on the elements of crime? IN [sic] other words, the crime will be made up of—and he'll give you an instruction that says, "first, second, third," and that sort of thing. And those things I have to prove beyond a reasonable doubt?

*Id.* at 604. We held that neither this nor other comments made during that voir dire constituted an incorrect definition of reasonable doubt and that the remarks constituted a discussion of the reasonable doubt standard rather than an attempt at definition. *Id.* at 605. In *State v. Brown,* 822 S.W.2d 529, 530 (Mo.App.1991), we held the following remarks during voir dire constituted a discussion of reasonable doubt and not a definition:

Now that also tells you that this proof beyond a reasonable doubt standard applies only to those elements of the crime. Doesn't apply to anything else, okay. So under the law you can have every doubt in the world about all kinds of things.

Likewise in this case, the remarks discussed the reasonable doubt standard; they did not misdefine the reasonable doubt concept or suggest a lower standard of proof.

▮ Dunn argues that the remarks were erroneous because they invited the jury to ignore its duty to consider conflicts in the evidence in reaching a determination of credibility. We disagree that the remarks conveyed such a meaning. In *State v. Jacobs,* 866 S.W.2d 919, 920–21 (Mo.App.1993), on which Dunn relies, the prosecutor stated:

Okay. Do you understand that this burden of beyond a reasonable doubt applies only to the elements that are charged in this case? In other words, there are three counts that are charged here in the petition. Youre [sic] going to hear testimony from a variety of witnesses, and their stories may not exactly jibe. Its [sic] very infrequent that you find people that will come in and tell you exactly the same story, whether its witness A and B.

Defendant objected on the grounds that the prosecutor was discussing the sufficiency of the evidence and was argumentative. The trial court overruled the objection and prosecutor continued:

Okay. Im [sic] going to repeat the last question again. Do you understand that the burden of reasonable doubt applies only to the elements that are given in the instructions? Youre [sic] going to have witnesses here that are going to give you different testimony, and you cant [sic] let that interfere. You need to consider the reasonable doubt instruction as it—or the burden as it applies to the case, as it applies to the elements that are charged in this case and not as to the conflicts in evidence. Is that understood?

*Id.* at 921.

In *Jacobs* our Western District agreed with *Brown* that an explanation that proof beyond a reasonable doubt did not apply to matters other than the elements of the crime was not an erroneous definition of reasonable doubt. *Id.* at 921, 922. However, it found the prosecutor's whole question was ill-advised because the prosecutor also attempted to distinguish the jury's duty of finding each element beyond a reasonable doubt from its responsibility to determine the credibility of the witnesses. The court found this action

tended to confuse and served no useful purpose. *Id.* at 922. The court held that the question was argumentative and the objection on that ground should have been sustained. *Id.* However, the court found the error was not prejudicial.

In this case the prosecutor limited his question to the application of reasonable doubt to the elements. The trial court did not abuse its discretion in overruling Dunn's objection that the prosecutor misstated the law. Point two is denied.

## C. Closing Argument

For his third point Dunn contends that the trial court plainly erred in not declaring a mistrial *sua sponte* during closing argument when the prosecutor commented on ten occasions that the state's evidence was uncontradicted and that there was no evidence to contradict the state's eyewitnesses. He argues that these statements were indirect comments on his right not to testify and were designed or were reasonably apt to direct the jury's attention to his failure to testify.

During his closing argument the prosecutor reviewed specific evidence with the jury which the prosecutor contended was uncontradicted: that the victim died as a result of a gunshot wound in the back of the head; that St. Louis police officers chased Dunn, who ran, and apprehended him; that the surviving victims identified Dunn as the perpetrator; and that the surviving victims knew Dunn from the neighborhood. The prosecutor also referred to the evidence as uncontradicted on two other occasions in closing and twice on rebuttal. Dunn made no objection to the comments at trial and did not raise this issue in his motion for new trial. Accordingly, we may review only for plain error.

We may exercise our discretion to consider plain errors affecting substantial rights when we find that manifest injustice or miscarriage of justice has resulted therefrom. Rules 29.12(b); 30.20. The plain error complained of must impact so substantially upon the rights of the defendant that manifest injustice or a miscarriage of justice will result if left uncorrected. *State v. Driscoll,* 711 S.W.2d 512, 515 (Mo. banc), *cert. denied,* 479 U.S. 922, 107 S.Ct. 329, 93 L.Ed.2d 301 (1986). When seeking plain error review, defendant bears the burden of establishing that the alleged error results in manifest injustice or miscarriage of justice. *State v. Hoopingarner,* 845 S.W.2d 89, 92 (Mo.App. 1993).

Plain error relief for comments made in closing argument is rarely granted and is generally denied without explanation because, in the absence of an objection and request for relief, any trial court action may constitute an uninvited interference with summation or trial strategy, which itself may be grounds for error. *State v. Clemmons,* 753 S.W.2d 901, 907–08 (Mo. banc), *cert. denied,* 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988); *State v. Wood,* 719 S.W.2d 756, 759 (Mo. banc 1986). Because we do not expect trial judges to assist counsel in the trial of a lawsuit, trial judges should exercise *sua sponte* action only in exceptional circumstances. *State v. Drewel,* 835 S.W.2d 494, 498 (Mo.App.1992). We find no such exceptional circumstances here.

A prosecutor's comment that the evidence is uncontroverted or uncontradicted, or that the defendant has failed to offer evidence, is not a direct or certain reference to a criminal defendant's failure to testify. *State v. Stanley,* 860 S.W.2d 836, 837 (Mo. App.1993); *State v. Robinson,* 641 S.W.2d 423, 426 (Mo. banc 1982). Dunn argues that the assertion that certain evidence was uncontradicted constituted an indirect reference to his failure to testify.

A prosecutor may violate a defendant's right against self-incrimination if, during closing arguments, the prosecutor makes an indirect reference which operates to focus the jury's attention on the fact that defendant failed to testify. *State v. Lawhorn,* 762 S.W.2d 820, 826 (Mo. banc 1988); *State v. Hemphill,* 608 S.W.2d 482, 484 (Mo. App.1980). An indirect reference is improper only if the prosecutor demonstrates a calculated intent to magnify that decision so as to call the failure to testify to the jury's attention. *Lawhorn,* 762 S.W.2d at 826;

*State v. Wood,* 719 S.W.2d 756, 761 (Mo. banc 1986).

■ In this case the specific evidence which the prosecutor characterized as uncontradicted related to conclusions, observations, and knowledge of the other witnesses. The challenged comments do not show that the prosecutor had a calculated intent to call the jury's attention to Dunn's decision not to testify and they were not reasonably likely to call the jury's attention to Dunn's failure to testify. The trial court did not plainly err in failing to declare a mistrial *sua sponte.* Point three is denied.

### D. Reasonable Doubt Instruction

■ For his fourth point Dunn asserts the trial court erred in submitting MAI–CR3d 302.04. This issue has been thoroughly and repeatedly addressed by the Missouri Supreme Court. *State v. Griffin,* 848 S.W.2d 464, 469 (Mo. banc 1993); *State v. Twenter,* 818 S.W.2d 628, 634 (Mo. banc 1991). This court is constitutionally bound to follow the last controlling decision of the Supreme Court of Missouri. *State v. Weems,* 800 S.W.2d 54, 58 (Mo.App.1990).

Dunn argues we should reverse or transfer to the Missouri Supreme Court in order for the instruction to be reanalyzed in light of *Victor v. Nebraska,* —— U.S. ——, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994). *Victor* does not change the *Griffin* analysis.

In *Victor,* the United States Supreme Court reviewed reasonable doubt instructions given in a California case and a Nebraska case both of which instructed jurors that they must have "an abiding conviction to a moral certainty of the charge." The court held the use of the phrase "moral certainty" in both instructions did not render the instructions unconstitutional because other language in the two instructions kept the jury from interpreting the words "moral certainty" as suggesting a standard of proof less than due process requires.

Dunn uses this case to support his contention that the use of "firmly convinced" in MAI–CR3d 302.04 is insufficient because it does not contain other language which would make this instruction constitutional. However Dunn does not cite any case holding that the words "firmly convinced" have the same ambiguity as "moral certainty"[3] and thus need to be "saved" by other language in the instruction.

Dunn relies instead on the Federal Judicial Center's Pattern Criminal Jury Instruction 21 on reasonable doubt to support his argument. Like MAI–CR3d 302.04 that instruction defines reasonable doubt as proof which leaves the jurors "firmly convinced" of the defendant's guilt. The MAI instruction ends with, "If you are not so convinced, you must give him the benefit of the doubt and find him not guilty." However, the Federal Judicial Center instruction ends with, "If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty." The fact that the Federal Judicial Center instruction uses the phrase "if—you think there is a real possibility that he is not guilty" in lieu of "if you are not so convinced" is not authority for a conclusion that MAI–CR3d 302.04 does not comport with due process.[4]

Dunn provides us with no basis to transfer this case to the Missouri Supreme Court for re-evaluation of *Griffin.* Point four is denied.

### E. Grand and Petit Jury Selection Procedures

For his fifth point Dunn asserts that the trial court erred in overruling his motion to quash the indictment or, alternatively in overruling his motion to stay proceedings because the selection procedures for the grand and petit juries in the City of St. Louis denied him a jury which reflected a fair cross

---

3. In *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), the court held an instruction which equated a reasonable doubt with a "grave uncertainty" and an "actual substantive doubt" and stated that what was required was a "moral certainty" suggested a standard of proof less than what due process required.

4. *Compare* Instruction 3.03, Manual of Model Criminal Jury Instructions for the Ninth Circuit 31 (1992 ed.).

section of the citizens as required by §§ 494.400 through 494.505, RSMo (Cum. Supp.1989). He contends that the procedures resulted in an underrepresentation of African–Americans and persons between the ages of 21–29.

■ Dunn premises his argument relating to grand jury selection on a statistical study compiled in October 1990 by Kenneth Warren, Ph.D. The data involved practices prevalent in the grand jury selection process from 1985 to May 1990. We have held this statistical analysis to be irrelevant to grand jury selection procedures occurring after the 1989 changes to the statutory provisions of §§ 494.400–494.505. *State v. Wheeler*, 845 S.W.2d 678, 681 (Mo.App.1993). These revisions were in effect when the grand jury returned Dunn's indictment in June 1990. "Because the statistical analysis did not cover the period of time relevant to the prosecution of defendant, the data cannot be used to support his constitutional challenge to the grand jury selection procedures." *Id.* See also *State v. Plummer*, 860 S.W.2d 340, 351 (Mo.App.1993).

■ Likewise Dunn's challenge to the selection of the petit jurors in the City of St. Louis has been addressed and rejected many times by this court. The Honorable Ronald M. Belt considered this challenge on a motion to stay all jury trials in the City of St. Louis in another criminal case. After a hearing, he issued an order staying all jury trials on October 16, 1990. Although he found no under-representation of racial, gender, or age groups, he found that the procedures used in granting juror continuances resulted in a non-random selection of some juror panels. The Board of Jury Commissioners immediately corrected this impropriety and Judge Belt lifted the stay order.

We have held that "[t]he evidence amply supports Judge Belt's finding of no underrepresentation of racial, gender, or age groups." *Plummer*, 860 S.W.2d at 352 (quoting *State v. Landers*, 841 S.W.2d 791, 793 (Mo.App.1992)). An administrative order issued by the Board of Jury Commissioners before Dunn was indicted corrected the perceived deficiencies in the petit jury selection procedures. *Wheeler*, 845 S.W.2d at 681–82;

*Plummer*, 860 S.W.2d at 352. Dunn presented no evidence that the new procedures in place at the time of his trial were inadequate. Point five is denied.

## POST–CONVICTION APPEAL

### A. Failure of Post–Conviction Counsel to File Amended Motion

■ For his sixth point Dunn asserts the trial court erred in failing to inquire *sua sponte* into why post-conviction counsel failed to file an amended post-conviction motion. Dunn claims the motion court's failure to act deprived him of due process because he had additional claims he wished to raise.

Dunn timely filed his *pro se* 29.15 motion. The trial court appointed counsel to represent him. On the day the amended motion was due, his appointed counsel filed a statement advising the court that Dunn would proceed on his *pro se* motion and not file an amended motion. The statement, which was entitled "Statement in Lieu of Filing an Amended Motion and Request for the Court to Rule on the Issues Raised on Movant's Pro Se Motion" stated in relevant part:

3. Undersigned counsel has reviewed the record in St. Louis Cityy [sic] case No. 901–01555 and information supplied by movant, and a review of movant's trial file;

4. Undersigned counsel has investigated all allegations raised by movant in addition to those in movant's *pro se* motion and concluded that there are no additional grounds to be raised before the court; ...

The motion court held a prehearing conference with counsel. Subsequently, the motion court granted an evidentiary hearing on the *pro se* motion at which Dunn's post-conviction counsel called witnesses and cross-examined the state's witness. Dunn's counsel obtained two extensions of the motion hearing in order to allow an absent witness to testify and, when that witness did not appear, made an offer of proof of that witness's testimony. The motion court issued findings of fact, conclusion of law, and an order.

Rule 29.15(e) sets out appointed counsel's responsibilities as follows:

Counsel shall ascertain whether sufficient facts supporting the grounds are asserted in the [*pro se*] motion and whether the movant has included all grounds known to him as a basis for attacking the judgment and sentence. If the motion does not assert sufficient facts or include all grounds known to the movant, counsel shall file an amended motion that sufficiently alleges the additional facts and grounds.

If counsel determines that there is no reason to file an amended motion, counsel must make a record of that determination. *Luleff v. State,* 807 S.W.2d 495, 498 (Mo. banc 1991). "A record that does not indicate whether appointed counsel made the determinations required by Rule 29.15(e) creates a presumption that counsel failed to comply with the rule." *Id. Luleff* requires a *sua sponte* hearing regarding the performance of both movant and counsel if there is no record of any activity by counsel at the time the motion court is ready to rule on a post-conviction motion. *Id.*

Each district court of appeals of this state has held that counsel's affidavit or signed statement reciting that counsel had reviewed the record and investigated all allegations raised by movant and concluded that there are no additional grounds to be raised constitutes a sufficient record that counsel made the determinations required by Rule 29.15(e). *State v. Shields,* 862 S.W.2d 503, 506 (Mo. App.1993); *Thurlo v. State,* 841 S.W.2d 770, 771 (Mo.App.1992); *State v. DeJournett,* 868 S.W.2d 527, 536 (Mo.App.1993). In this case the additional fact that the motion court granted an evidentiary hearing on the *pro se* motion indicates that the motion contained sufficient factual allegations.

This case is unlike *Cameron v. State,* 863 S.W.2d 385 (Mo.App.1993), on which movant relies. In *Cameron* the court of appeals required a *sua sponte* hearing because counsel did not file a statement indicating that appointed counsel had ascertained whether the *pro se* motion included all grounds known to the movant and the *pro se* motion was patently defective in that it did not contain any facts in support of the grounds for relief. Also the motion court in *Cameron* denied the defective *pro se* motion without an evidentiary hearing.

At the time the motion court proceeded to rule on Dunn's motion, the court had sufficient information of appointed counsel's activity with respect to her determination of the *pro se* motion's sufficiency both from the record and her representation of movant before and at the evidentiary hearing. A *sua sponte* inquiry into counsel's performance was not required. Point six is denied.

### B.  Failure to Issue Findings on All Issues

For his seventh point Dunn claims that the trial court clearly erred in not entering findings of fact and conclusions of law on his *pro se* claims I, VII, 5, 6, 7, A, B, C, D, F and H. He contends he presented sufficient evidence on those claims to require findings under Rule 29.15(i).

▮▮▮ Rule 29.15(i) requires the motion court to "issue findings of fact and conclusions of law on all issues presented." The findings must be sufficiently specific to allow meaningful appellate review. *Barry v. State,* 850 S.W.2d 348, 350 (Mo. banc 1993). This rule has exceptions. *Id.* Findings of fact are not required on an issue of law. *Id.* Findings of fact and conclusions of law are also not required on an allegation if the motion court grants a hearing on the motion and movant fails to present substantial evidence at that hearing to support that allegation. *Id.*

Movant asserts the court failed to rule on his claims that trial counsel was ineffective in failing to preserve a challenge to probable cause for the arrest and search, in failing to put on any defense which would include calling Dewayne Rogers to testify someone else had done the shooting, in failing to move for the appointment of a psychiatrist to determine Dunn's competence, in failing to call alibi witnesses, in failing to impeach the state's witnesses with prior inconsistent statements, in failing to impeach a state's witness with the terms of his plea bargain, in failing to subpoena Deaconess Hospital telephone records, and in failing to bring out the fact that the deceased victim had previously shot someone else, and that all the victims

were members of the same gang. He also alleged that he was denied due process in that his trial counsel, an assistant public defender, was an agent of the state.

At the motion hearing movant only adduced evidence relating to the failure to call alibi witnesses, the failure to call Dewayne Rogers, and the failure to impeach one of the victims with prior inconsistent statements. The motion court was not required to issue findings of fact and conclusions of law on any of the other allegations on which no evidence was adduced. *Harry v. State*, 800 S.W.2d 111, 116 (Mo.App.1990). The court did issue findings of fact and conclusions of law with respect to the failure to call alibi witnesses and concluded that this was a matter of trial strategy and one of the witnesses would not have provided a defense.

This leaves the issues of failure to call Dewayne Rogers and the failure to impeach the victim DeMorris Stepp with prior inconsistent statements. The motion court did not treat these issues individually in its findings of fact and conclusions of law.

Dunn testified that when he was in prison other inmates told him that another inmate Dewayne Rogers, the deceased victim's brother, had told them that someone other than Dunn had killed his brother. Trial counsel testified that when Rogers was released on bond, counsel's investigator made several attempts to find him. The investigator contacted Rogers' mother who said Rogers had nothing to say and knew nothing about it. She would not help the investigator locate him. The investigator continued to look for Rogers but never found him.

Trial counsel may be found ineffective for failing to locate and call a witness only if the movant can show that the witness could have been located through reasonable investigation, the witness would have testified if called, and the witness's testimony would have provided a viable defense. *Twenter*, 818 S.W.2d at 639–40; *State v. Vinson*, 800 S.W.2d 444, 448–49 (Mo. banc 1990). Dunn offered no evidence that Rogers could have been located through reasonable inves-

tigation or that he would have testified if called. Rogers did not appear at the hearing and thus there is no evidence of what Rogers' testimony would have been. *Harry*, 800 S.W.2d at 115–16. This allegation was not supported by substantial evidence. Accordingly, the motion court was not required to make detailed findings on this issue.

Dunn's only evidence of trial counsel's failure to impeach Stepp was elicited on cross-examination. Trial counsel admitted she did not cross-examine Stepp on the fact that he told police Dunn was hiding around the corner on a lot whereas at trial he testified that Dunn stood by the side of the gangway. Trial counsel also admitted she did not cross-examine Stepp on the fact that he told police he was sitting on the porch steps whereas at trial he was standing on the last porch step. She further testified that she did not cross-examine Stepp as to whether he had earlier equivocally identified Dunn because she did not consider the earlier identification to be equivocal in any respect.

Counsel's mere failure to impeach a witness does not entitle a movant to post-conviction relief. *Baugh v. State*, 870 S.W.2d 485, 491 (Mo.App.1994). A movant has the burden to show how impeachment on these points would have provided him a defense, *Roe*, 845 S.W.2d at 606 or would have changed the outcome of the trial. *State v. White*, 798 S.W.2d 694, 699 (Mo. banc 1990). The movant also must overcome the presumption that the decision not to impeach was a matter of trial strategy. *See Roe*, 845 S.W.2d at 606.

Dunn presented no evidence which showed how impeaching Stepp on prior inconsistent statements relating to his and Dunn's exact positions within the crime scene at the time of the offense would have provided him a defense or changed the outcome of his trial. Further, Dunn presented no evidence to overcome the presumption that counsel's decision not to impeach the witness on these statements was a matter of sound trial strategy.[5] Likewise, Dunn presented no

---

**5.** Rather, the record reveals that Stepp's trial testimony as to where he was on the porch and

where Dunn was standing conflicted with the

evidence to overcome the presumption that counsel's decision not to impeach the witness on a prior identification was not sound trial strategy where counsel had determined that the prior identification was not equivocal. Dunn failed to support these allegations by substantial evidence. The motion court was not required to make detailed findings on these issues. Point seven is denied.

### C. Adoption of State's Proposed Findings

■ For his eighth point Dunn claims that the motion court clearly erred and deprived him of due process when it adopted *verbatim* the state's proposed findings of fact and conclusions of law. Dunn claims that the motion court improperly delegated its function to the state and failed to independently evaluate the evidence.

After its hearing on July 8, 1993, the motion court gave the parties until July 23, 1993 to submit proposed findings of fact and conclusions of law. The state filed proposed findings on that date; Dunn did not. On July 29, 1993 the motion court overruled the motion and signed findings of fact and conclusions of law which were almost identical to those proposed by the state.

Dunn's complaint that this action deprived him of due process has been addressed and rejected by the Missouri Supreme Court. *State v. White*, 873 S.W.2d 590, 599–600 (Mo. banc 1994). There the court held:

Adopting all or part of a party's proposed findings, or adopting by reference the wording of a party's motion, has become a common practice among lawyers and judges in both criminal and civil cases. Courts frequently request both parties to draft findings of fact and conclusions of law that conform to how the court intends to resolve the issues in dispute. The court then takes the parties' recommendations under advisement and either drafts its own findings of fact and conclusions of law or adopts one of the parties' findings in whole or in part. As long as the court thoughtfully and carefully considers the parties' proposed findings and agrees with the content, there is no constitutional problem

with the court adopting in whole or in part the findings of fact and conclusions of law drafted by one of the parties. Once the trial court determines that it agrees with one of the parties' findings and signs the order, the court has in effect adopted that party's findings as its own.

*Id.* at 600.

This practice does not violate the constitution as long as the trial court is satisfied that its findings of fact and conclusions of law reflect its independent judgment. *Id.* Dunn did not present any evidence that the findings and conclusion did not reflect the motion court's independent judgment. Point eight is denied.

### D. Failure to Call Witnesses

■ For his ninth point Dunn contends he was denied effective assistance of counsel because his trial counsel failed to investigate and call Arnetta Dunn, Martha Dunn, and Nicole Williams as alibi witnesses and Dewayne Rogers as an eyewitness. In his motion Dunn alleged that he gave Arnetta Dunn's and Martha Dunn's names and addresses to counsel and they would have testified that Dunn was at home when the shooting occurred. He also alleged that Nicole Williams would have testified that she was in the hospital and Dunn telephoned her there at the time of the shooting. He alleged that Dewayne Rogers was at the scene of the shooting and would have testified that Dunn was not the person who killed the victim.

We have already considered the claim relating to Dewayne Rogers and found that Dunn did not elicit substantial evidence that Dunn could have been located, would have testified if called, or that his testimony would have provided a viable defense. Accordingly, Dunn did not establish ineffective assistance of counsel with respect to the failure to call Dewayne Rogers.

At the motion hearing Dunn's trial counsel testified that she decided not to use the alibi defense that Dunn was at home at the time of the shooting because it was a "weak, if not bad" defense. She spoke with Martha Dunn, movant's mother, on several occasions but

other victim's trial testimony, which conflict de-

fense counsel argued to the jury.

concluded she would not be a good witness because she admitted she lied to the police on two occasions. Martha Dunn had given police Dunn's clothing which matched the description of the perpetrator's clothing, and trial counsel did not want the prosecutor to use Martha Dunn to put that clothing into evidence. Martha Dunn's explanation for lying to the police included an explanation that Dunn had escaped from a halfway house which would indicate prior convictions. Counsel's investigator interviewed Arnetta Dunn who would have contradicted Martha Dunn and also would have explained that she was there when Martha Dunn lied to police, but did not volunteer the truth because Dunn had escaped from a halfway house.

Trial counsel was never able to contact Nicole Williams. Post-conviction counsel asked Williams to testify at the PCR hearing but Williams said she had to work. After the hearing the motion court continued the case in order to give Williams an opportunity to testify. Williams was subpoenaed for the next setting, but arrived too late to testify. The hearing was reset. Post-conviction counsel's investigator re-subpoenaed Williams for the third setting, but when counsel talked to Williams by telephone the night before the hearing, Williams denied she had been subpoenaed and contended she could not miss summer school and come to court. She did not appear. The court accepted counsel's offer of proof which was that Christopher Dunn called her at the hospital the night her baby was born, but she was unsure of the time of the call except that it was "maybe" after a particular television program.

The motion court found that even if the witnesses were believed they would not have provided a defense because the time was "imprecise." It also found that the decision to call witnesses is a matter of professional judgment and counsel had expressed reasons why these witnesses should not be called.

Appellate review of a denial of post-conviction relief is limited to whether the findings, conclusions and judgment of the motion court are clearly erroneous. Rule 29.15(j); *Vinson*, 800 S.W.2d at 448. The motion court's findings, conclusions and judgment are clearly erroneous only if a review of the entire record leaves the reviewing court with the impression that a mistake has been made. *Vinson*, 800 S.W.2d at 448.

To prevail on a claim of ineffective assistance of counsel, a movant must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). To prove deficient performance a movant must show that counsel's acts or omissions were outside the range of professionally competent assistance. *Id.* Movant must overcome the presumption that counsel's challenged acts or omissions were sound trial strategy. *State v. Childers*, 801 S.W.2d 442, 447 (Mo.App.1990). To show prejudice a movant must show there was a reasonable probability that, but for the errors by his attorney, the jury would have had a reasonable doubt respecting his guilt. *Id.* If a movant makes an insufficient showing on either the deficient performance component or the prejudice component, the court need not address the other component. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069. Here, the trial court did not clearly err in finding that the decision not to call the alibi witnesses was trial strategy and that Nicole Williams' testimony would not have provided a defense.

The trial court's finding that Dunn was not denied effective assistance of trial counsel is not clearly erroneous. Point nine is denied.

The case on direct appeal is remanded for a *Batson* hearing. In all other respects it is affirmed. The order of the motion court is affirmed.

CRANDALL and DOWD, JJ., concur.